GRANGE WAREHOUSE ASSOCIATION *v.* OWEN.

(*Nashville.* February 9th, 1888.)

1. CONTRACT. *Parol reservation of title, as security for money advanced by a warehouseman to purchase personalty, valid. Replevin.*

A warehouseman or commission merchant, advancing money to a customer to purchase produce to be shipped to him and sold on the customer's account, may validly stipulate by *parol* that the title to the property thus purchased shall vest and remain in him as security for the money advanced, although its possession passes temporarily to the customer for preparation and shipment; and upon the title thus reserved the warehouseman or commission merchant can maintain replevin against the customer, his administrator, or creditors, for such property thus purchased, as can be identified.

Cases cited and approved: Tedford *v.* Wilson, 3 Head, 311; Burke *v.* Harrison, 5 Sneed, 236; Houston *v.* Dyche, Meigs' Rep., 76; Buson *v.* Dougherty, 11 Hum., 50; Wharton *v.* Lavender, 14 Lea, 178.

2. WITNESS. *Stockholder competent in suit between corporation and an administrator.*

In a suit by a private corporation against an administrator, a stockholder is a competent witness on behalf of the corporation to prove a contract, entered into between the decedent and the corporation, through himself as the latter's agent.

(See Code, ¿4565 (M. & V.); ¿3813*d* (T. & S.); also Godfrey *v.* Templeton, *ante*, pp. 168–171.)

3. SAME. *Parties as. Exception strictly construed.*

The exception as to suits by and against administrators, etc., contained in the statute making *parties* and persons *interested* in subject-matter of suit competent witnesses, must be strictly construed. The exception applies only to *parties*, and not to *interested persons*.

Case cited and approved: Fuqua *v.* Dinwiddie, 6 Lea, 645.

(See Godfrey *v.* Templeton, *ante*, pp. 168–171.)

---

FROM ROBERTSON.

---

Appeal from the Chancery Court of Robertson County. GEORGE E. SEAY, Ch.

J. W. JUDD for Complainant.

JOHN E. & A. E. GARNER and L. T. COBBS for Respondents.

FOLKES, J. The complainant, in its corporate capacity, brought this bill to recover possession of certain tobacco in the barn or factory of John F. Owen, deceased, claiming title thereto under a certain contract made with said Owen, which is thus stated by Herndon, the superintendent of the complainant, who was examined as a witness:

. "The plaintiff agreed to furnish money to John F. Owen to pay for tobacco, which he was to prize and deliver to the plaintiff; and to secure the plaintiff against loss by the said transaction, the title to all of said tobacco so bought should vest in plaintiff, and as further security the said Owen was to put up collateral security as might be demanded by plaintiff to cover losses or shrinkage in value. The plaintiff was to sell said tobacco at best possible advantage, and after deducting money furnished with interest, at what it cost plaintiff, with all legitimate expenses, all the profits were to belong to Owen."

The proof shows that such a contract had been made and performed for the tobacco season of 1881, renewed for 1882, and the complainant had advanced Owen for the season of 1883, beginning November 1st, 1882, the sum of $34,848.27, and the latter had shipped to complainant 218 hogsheads of tobacco. The proceeds of the sale of

these 218 hogsheads, after deducting interest, storage, freights, commissions, etc., were credited to Owen's account, leaving a balance of $9,464.35 due complainant at the death of Owen, which occurred in July, 1883.

Under the bill in this cause the complainant obtained possession of fifty-one hogsheads of tobacco, and after selling same, and deducting the usual charges, the net proceeds thereof amounted to $5,-784.85, which, being credited to the account, left a balance of $3,679.50 still due complainant, for which, on final hearing, decree was rendered in favor of complainant against the administrator of said Owen, with interest, the Court adjudging that complainant was entitled to maintain replevin for the fifty-one hogsheads, and that the proceeds were properly applied.

Defendant has appealed, and assigned as error, first, the action of the Chancellor in overruling the demurrer to the bill, and in permitting complainant to amend its bill; second, the decree final in favor of complainant as to the fifty-one hogsheads; third, the action of the Court in overruling objections to testimony of the witness Herndon—each of which will be considered in the order stated.

Briefly stated, the demurrer was to the effect that the contract, as stated in the bill, presented merely the case of debtor and creditor between the complainant and deceased, and gave no lien or title to the tobacco then in the barn or factory of the

deceased that would authorize the complainant to maintain replevin for the same, and that the only relief to which complainant was entitled was its action for money had and received, or for debt, or for the breach of the contract to ship the tobacco as agreed.

There was no error in overruling the demurrer, nor in allowing the bill to be amended. The bill set up the contract and agreement that the "property and title in said tobacco belonged to complainant," and the amendment was before answer and in no manner objectionable, although it seems to have been unnecessary, as it does not appear to strengthen the case made in the bill. The allowance of such amendment at that stage of the proceedings was clearly within the discretion of the Chancellor, and its proper exercise will not be disturbed.

The defendant answered the bill, original and amended, denied the contract as charged in the bill, insisted that it was an ordinary advance or loan of money, with expectation that the tobacco which Owen was to purchase therewith would be consigned to complainant for sale, so that complainant might obtain the profit of handling, storing, and selling same; that the tobacco found in the barn at the death of Owen, out of which the complainant had replevied the fifty-one hogsheads, were general assets of the estate of defendant's intestate, and that he was entitled, as such, to administer the same for the benefit of all creditors of said estate.

There was proof taken by both sides, from which it satisfactorily appears that the contract, though oral, was substantially as stated in the bill; that under this contract the money was furnished to and invested by Owen in the purchase of tobacco from sundry parties; the tobacco was then carried to Owen's barn and packed in hogsheads, it being purchased loose; and as pressed the hogsheads were shipped to complainant with Owen's name stamped thereon; and as the tobacco was sold, account sales of same were rendered from time to time to Owen, in the usual form of sales by warehousemen or commission merchants, and the net proceeds credited on the account current periodically rendered Owen.

The proof further establishes that it was the intention and wish of the deceased that the tobacco on hand in the barn at the time of his death should be pressed, and shipped from the home of deceased, in Robertson County, to the complainant, at its place of business in Clarksville, Montgomery County, under the contract; and that the deceased gave such instruction to his brother, who was attending to the business for him; and that the brother, after he became administrator, undertook to carry out the contract and instructions of intestate, and did accordingly press into hogsheads a portion of the tobacco on hand, and mark the same consigned to complainant in the same manner as deceased had been in the habit of doing, intending and promising to ship same accordingly,

when he was notified by other creditors that they would insist that the tobacco was assets of the estate, and, as such, should be held by the administrator. He thereupon refused to ship any of the tobacco, and this suit was brought.

While there is some proof tending to show that the deceased had some little money and credit, with which it is contended he bought tobacco independently of his arrangement with complainant, it is manifest, from the great preponderance of the evidence, that the deceased was without money or credit, although he had a small farm, and that the tobacco replevied by complainant was purchased and paid for by deceased with the money furnished by complainant, under the contract as already stated. The insolvency of Owen's estate is proven to have been suggested in the County Court, where it is being administered as such.

The question, therefore, is squarely presented, whether a parol contract, such as is above herein stated, whereby a warehouseman or commission merchant furnishes money to a customer, to be by the customer invested in the purchase of personal property that passes temporarily into the custody of the party making the purchase, to be handled and then shipped to the party so furnishing the money, to be sold on the account of the purchaser, with the agreement that the title to the property so purchased is to pass to and remain in the party furnishing the money, as security therefor, until he is reimbursed the amount advanced for that pur-

pose, is a valid contract, that can be enforced as against creditors of the party to whom the money is advanced, or, as in this case, against the administrator of an insolvent estate, by a replevin of the goods so purchased where they are identified.

The exact question has never been passed upon by this Court, so far as the reported cases show.

That it is a question of vast importance to certain large and valuable business interests of the State, is most manifest.

Several millions of dollars are annually advanced by warehousemen, commission merchants, and factors, in the handling of tobacco, cotton, and other produce, upon just such contracts, and it is of great concern that the rights of such parties be known.

We are of opinion that such a contract is valid and enforceable; that there is nothing in the letter nor spirit of our registration laws to oppose such holding; and that grave considerations of public policy invite such conclusions, where no principle of law is contravened.

Such holding is in harmony with our decisions, so far as analogy can go.

Thus, in *Tedford* v. *Wilson*, 3 Head, 311, speaking of the rights of a manager on a farm, under contract with the owner that "the proceeds of the farm were to be liable to the manager for his wages," where the same were levied on by a creditor of the owner, and bill filed by the manager to enjoin the execution, Judge McKinney, in delivering the opinion of the Court, said:

"It is true that, as against creditors, a lien cannot be created by contract between the parties upon a personal chattel in existence at the time of such contract without registration; but that principle is not applicable to the present case. This was simply an agreement that the future products of the farm, not then in existence, should be first subject to the satisfaction of Tedford's annual wages. This is not a contract or agreement falling within either the letter or the spirit of the Registration Act."

Again, in *Burke* v. *Harrison,* 5 Sneed, 236, where, upon the sale of a chattel, the vendee was required to give security upon the note therefor, which he did under a verbal agreement with said security that he, the vendee, should keep possession, but that the title, by way of indemnity, should vest in said surety until the vendee paid the note, and possession was delivered to the vendee, who retained the same until the maturity of the note, which was paid by the surety, it was *held* that neither the vendee nor any creditor of his could assert a title to the chattel as against the surety, without a payment or tender of the amount so paid by the surety. The argument was, that such an arrangement was merely a *parol mortgage,* and, as such, void under the registration laws as against the creditors of the vendee. This Court said:

"We think it clear that no title to the property ever vested in the purchaser, but that it passed, by the mutual assent of all the parties,

from the seller directly to the surety, from whom, in reality, the consideration must be regarded as having passed," etc.

So here we say that, under the agreement, the title to the tobacco at and when purchased by Owen, passed and vested at once in the Warehouse Association as security for the money advanced for, and used in, its purchase.

It has been long recognized in this State that a vendor of a chattel may sell and deliver possession to the vendee, and by agreement retain the title in himself as security for the purchase-money, and that the title thus retained is good as against creditors of the vendee. *Houston* v. *Dyche*, Meigs' Rep., 76; *Buson* v. *Dougherty*, 11 Hum., 50; and other later cases.

Now, if Owen could have purchased directly from the Warehouse Company, and allowed the latter to retain title as security for the purchase-money, and if he could have, in his purchase from a stranger, agreed that the Warehouse Company, as his surety for the purchase-money, might have title to the property until purchase-money was paid, why is it that he should not be allowed to agree that the title shall be and remain in the Warehouse Company until it be reimbursed, by shipment to and sale by it, for the cash advanced with which to pay for the tobacco? We can see no difference in principle.

The case of *Wharton* v. *Lavender*, 14 Lea, 178, also furnishes an analogy. This was a case where

Lavender had agreed with the bank that if the latter would furnish the money to pay for certain cattle, he would pledge the cattle for the repayment of the money, and not keep the cattle longer than thirty days. He sold the cattle within the thirty days, for the declared purpose of paying the bank, and gave instructions for the proceeds to be paid to the bank. By mistake the purchaser sent check to Lavender, which was delivered to his wife, he being on his death-bed, and dying within forty-eight hours thereafter, without receiving the check or taking any action in relation thereto.

The point decided in the case was that the facts stated made out " a completed appropriation of the fund by Lavender in his life-time, which was not affected by his death and the insolvency of his estate."

. In this case the title was not to be taken to the bank but to Lavender. The learned judge who delivered the opinion intimates very strongly that, had the appropriation of the money not been made, the contract created a valid pledge of the cattle to the bank, notwithstanding the possession remained with Lavender, the pledgeor, he being constituted the agent for the pledgee so as to satisfy the law as to the possession passing with the pledge. This case is instructive, although not authoritative, in the matter under consideration.

The distinction between the case at bar, where the contract clearly stipulated for the *title* to vest

in the party making the advance of money immediately upon the purchase, and the ordinary case of a loan or advance of money under a promise that what is bought shall be shipped to the party advancing, to be sold on account of the party purchasing, is too obvious to merit mention here.

There remains to be disposed of only the question presented by the objection taken to the competency of the witness Herndon to prove the contract with the deceased. It is said that, as Herndon is shown to be a stockholder in the complainant company, he is an interested party, and, as such, cannot testify to conversations or transactions had with the deceased in a suit against his administrator. Under our statute, *interest* does not disqualify in suits by or against executors, administrators, etc. The exclusion goes only to *parties to the suit*. It is an exception to the statute removing the disability of interest, and as such is to be construed strictly. "In actions or proceedings by or against executors, etc., * * * *neither party* shall be allowed to testify against the other." The objection was not well taken. *Fuqua* v. *Dinwiddie*, 6 Lea, 645.

Let the decree be affirmed with costs.