PEIL et al. v. WARREN, Jr., et al.*
(No. 7157.)

(Court of Civil Appeals of Texas. Galveston. May 31, 1916. Rehearing Denied June 29, 1916.)

1. WITNESSES ⟨⟩150(3) — "SUIT BETWEEN HEIRS" — TRANSACTIONS WITH DECEDENT — STATUTE.

A suit for partition, brought by plaintiff as heir of her deceased father against her brother and her sister, the only other surviving heirs jointly and equally interested therein, where it appeared that the sister and her husband had conveyed to the brother all their interest in the land except in certain tracts, and where the only issue was whether the brother owned in his own right, as a partner of his father, a one-half undivided interest in certain tracts, was a suit by or between heirs of a decedent as such, within Vernon's Sayles' Ann. Civ. St. 1914, art. 3690, so that testimony of the sister and her husband and of the brother as to statements made by and transactions had with the deceased father, tending to show that the brother was a partner in a land business and owned a one-half interest in several tracts involved in the suit, was inadmissible.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 655; Dec. Dig. ⟨⟩150(3).]

2. WITNESSES ⟨⟩155 — TRANSACTIONS WITH DECEDENT—"OPPOSITE PARTIES."

In such suit, where it was contended that the defendant brother was sued in his individual capacity and not as heir of his deceased father, and that the defendant sister and her husband were not adversely interested to plaintiffs, but where the sister's answer began with a demurrer to the petition and included a general denial of its allegations and opposed the parti-

tion of the land involved, their testimony as to transactions with and statements by their deceased father relative to matters involved in the suit was inadmissible within Vernon's Sayles' Ann. Civ. St. 1914, art. 3690, rendering evidence as to such transactions and statements inadmissible unless the party is called to testify thereto by the opposite party, since the defendants were "opposite parties" to plaintiff, regardless of whether they were interested in the subject-matter of the suit or not.

[Ed. Note.—For other cases, see Witnesses, Dec. Dig. ⟨⟩155.

For other definitions, see Words and Phrases, First and Second Series, Opposite Party.]

3. WITNESSES ⟨⟩37(1) — COMPETENCY — IN GENERAL.

Under the general rules of evidence, all persons are competent witnesses to testify to any fact which is relative and material to the matter under investigation, and which is within their knowledge, and are disqualified to so testify only because excepted by some special statute.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 80, 83, 87; Dec. Dig. ⟨⟩37(1).]

4. APPEAL AND ERROR ⟨⟩1052(8)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

In a suit for partition, error in the admission of evidence of transactions with and statements by the deceased father of the parties was harmless, where the other independent evidence in the case was not such as to require the court to render a different judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4177; Dec. Dig. ⟨⟩1052(8).]

5. PARTITION ⟨⟩63(3)—SUFFICIENCY OF EVIDENCE.

Evidence held sufficient to support a verdict for plaintiff with an award of a one-half interest in certain tracts to the brother as partnership land of himself and the deceased.

[Ed. Note.—For other cases, see Partition, Cent. Dig. § 185; Dec. Dig. ⟨⟩63(3).]

Error from District Court, Harris County; Chas. E. Ashe, Judge.

Suit for partition by Mary G. Peil and husband against John Warren, Jr., and others. Judgment for plaintiffs, allowing a one-half interest in certain tracts to defendant John Warren, Jr., and plaintiffs bring error. Affirmed.

W. S. Hunt and Roberts & Sears, all of Houston, for plaintiffs in error. Campbell, Sewall & Myer and Hutcheson & Hutcheson, all of Houston, for defendants in error.

LANE, J. This suit was instituted by Mary G. Peil and husband, W. J. Peil, against John Warren, Jr., and Mrs. Eliza J. Ellis and husband, George Ellis, for partition of certain tracts of land described as follows: T. Coghill survey of 1,476 acres more or less; A. Culliver survey of 1,476 acres more or less; Samuel Everetts survey of 220 acres more or less; Samuel McCurley survey of 245 acres more or less; lots 5, 11, 12, 15, section 22, of Harris county school lands, containing 163 acres more or less; J. Hudson survey of 640 acres more or less; G. N. Kinman survey of 373 acres more or less; Geo. Pembleton survey of 640 acres more or

less; Walter Wade survey of 580 acres more or less; H. T. & B. Ry. Co. survey of 640 acres more or less; A. B. Langerman survey of 98.52 acres more or less.

It is alleged in plaintiffs' petition that all of said land was the property of John Warren, Sr., at the time of his death; that he died intestate, and that plaintiff Mary Peil and defendants John Warren, Jr., and Mrs. Eliza Ellis were the children and only surviving heirs of said John Warren, Sr., and that they were jointly and equally interested therein.

Eliza J. Ellis and husband, George Ellis, answered, alleging that they had sold and conveyed to John Warren, Jr., all interest owned by them in all of said tracts of land except the T. Coghill tract of 1,476 acres, the A. Culliver tract of 1,476 acres and lots 5, 11, and 15, section 22, of Harris county school lands of 163 acres.

John Warren, Jr., the other defendant, admitted that the deeds of conveyance, of record in Harris county, showed that all said land was conveyed to John Warren, Sr., deceased, and that the legal title, apparent of record, was in John Warren, Sr., but he alleged that at and prior to the time the said J. Hudson tract of 640 acres; the G. N. Kinman tract of 363 acres; the Geo. Pembleton tract of 640 acres; the Walter Wade tract of 580 acres; the H., T. & B. Ry. Co. tract of 640 acres; and the A. B. Langerman tract of 98.52 acres; or any of them—were deeded to said John Warren, Sr., he, the said John Warren, Jr., and John Warren, Sr., were engaged as copartners in the business of buying and holding land and raising cattle under the name of John Warren, and that said last-named six tracts of land were so purchased by them; that while the land in fact was conveyed to John Warren, Sr., it was purchased for said partnership and paid for out of the funds of said copartnership, or that one-half of the purchase money was paid by each of said partners, and that the legal title thereto was held by John Warren, Sr., in trust for said copartnership; that the said John Warren, Sr., and he, the said John Warren, Jr., each owned a one-half interest in all of said copartnership property.

It was admitted by all parties that whatever lands belonged to John Warren, Sr., at the time of his death was jointly and equally owned by plaintiff Mrs. Peil, Mrs. Ellis, and John Warren, Jr.; that thereafter Mrs. Ellis, joined by her husband, George Ellis, conveyed all their undivided interest in all of said land to John Warren, Jr., except their one-third undivided interest in the Coghill, Culliver and Harris county school land tracts, and that they now hold vendor's lien notes executed by John Warren, Jr., for part of said purchase money, which they are setting up in this suit as liens on said land so sold by them.

The only controversy is as to whether or not John Warren, Jr., owned in his own right as a partner of his father, John Warren, Sr., one-half undivided interest in the Hudson, Kinman, Pembleton, Wade, Langerman, and H., T. & B. Ry. Co. tracts.

The case was tried before a jury upon special issues in substance as follows:

First. Were the George Pembleton, Walter Wade, J. Hudson, G. N. Kinman, A. B. Langerman, and H., T. & B. Ry. Co. tracts paid for out of the proceeds of the sale of cattle or other livestock belonging to the firm composed of John Warren, Sr., and John Warren, Jr.?

Second. At the time of the purchase of the above-named tracts, was there an agreement between John Warren, Sr., and John Warren, Jr., that John Warren, Jr., was to have a one-half interest in said tracts?

The jury answered both of said questions in the affirmative. Upon the answers of the jury the court rendered judgment as prayed for by plaintiffs, except that one-half undivided interest in the J. Hudson, G. N. Kinman, George Pembleton, Walter Wade, A. B. Langerman, and H., T. & B. Ry. Co. tracts were awarded by the same to John Warren, Jr., as his one-half interest in the partnership land of himself and John Warren, Sr., deceased, and except that the vendor's lien asserted by Mrs. Eliza Ellis against a certain interest in said lands sold by her to John Warren, Jr., was foreclosed as against such interest so sold. From this judgment the plaintiffs Mary J. Peil and husband, W. J. Peil, have appealed.

[1] By appellants' first, second, and third assignments it is insisted that the court erred in permitting George Ellis, Eliza Ellis, and John Warren, Jr., to testify to certain statements made by, and transactions had with, John Warren, Sr., deceased, tending to show that John Warren, Sr., and John Warren, Jr., were partners in a cattle and land business as alleged by John Warren, Jr., and that he, John Warren, Jr., owned a one-half interest in several tracts of the land involved in this suit, because this was a suit by plaintiffs as heirs of John Warren, Sr., against defendants, other heirs of said John Warren, Sr.; and that the admission of such testimony was in violation of the provisions of article 3690. Vernon's Sayles' Statutes, wherein it is provided that:

"In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the other as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

Appellees contend that article 3690, supra, has no application to a suit of this character: (1) Because this is not a suit by or against heirs of a decedent as such, and not one in which judgment may be rendered for

or against heirs as such, but is a suit between heirs of a decedent in their individual capacity; and (2) that the testimony of defendants Eliza Ellis and George Ellis was admissible because neither of them were adversely interested to the plaintiffs. We do not think that either of such contentions is tenable. Plaintiffs Mary Peil and husband sue for an interest in the land described in their petition, and pray for a partition thereof for Mary Peil as an heir of John Warren, Sr. No claim whatever is made to any portion of said land by plaintiffs, except that Mary Peil inherited the same as such heir. They sue all the defendants as heirs of John Warren, Sr., and specially alleged that the defendants have an interest in said land as such heirs. Mrs. Eliza Ellis and husband, George Ellis, assert no claim to any interest in said land except as such heirs. Defendant John Warren, Jr., also claims a certain interest in said land as an heir of John Warren, Sr. We think the suit was clearly a suit by heirs as such, and that it was also a suit against heirs as such, and that the provisions of article 3690, Vernon's Sayles' Statutes, does apply as contended by the plaintiffs.

[2, 3] All the witnesses whose testimony was objected to were parties to the suit and interested in the subject-matter thereof, and all of them were "opposite parties" from the plaintiffs, as that term is used in said article 3690. There is no contention that John Warren, Jr., is not such "opposite party," but it is contended that he is sued in his individual capacity, and not as an heir of John Warren, Sr. It is also contended that Eliza Ellis and husband, George Ellis, are not adversely interested to plaintiffs and that therefore the provisions of article 3690, supra, do not, as to either of them, apply. If we look to the answer of Ellis and wife, we find that they begin their answer by a demurrer to plaintiffs' petition; that they make a general denial of all and singular the allegations of said petition, and that they specially oppose the partition of the land involved, as prayed for by plaintiffs. We think they are clearly "opposite parties" to plaintiffs, as that term is used in the statute mentioned. We also think the testimony objected to was with reference to transactions with, and statements made by, John Warren, Sr., relative to matters involved in this suit, and therefore was inadmissible, and that the trial court erred in admitting the same over the objection urged thereto. Under the general rules of evidence in this state, all persons are competent witnesses to testify to any fact which is relative and material to the matter under investigation, and which is within the knowledge of such person, and if they are disqualified to so testify, it is only by reason that they have been excepted out of the general rule by some special statute. Article 3690, supra, is a statute which specifically provides an exception to the general rule above referred to, and specially provides that, in actions by or against heirs, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the other as to any transaction with, or statement by, the testator, intestate, or ward, unless called to testify thereto by the opposite party, etc., the persons excluded from testifying in the case mentioned are excluded only because they are specially excepted out of the general rule of evidence. This statute excludes parties to the suit specifically, and it therefore makes no difference whether they are interested in the subject-matter of the suit or not. If they are the "other party," opposite party, to those in the suit who object to their testimony, and who did not call them to testify, they were incompetent witnesses to testify to transactions with, and statements made by, the intestate, relative to the matters in dispute, because, and only because, they are made incompetent by the statute. Colonial & U. S. Mort. Co. v. Thedford, 21 Tex. Civ. App. 254, 51 S. W. 263; Roberts v. Yarboro, 41 Tex. 449; Gilder v. Brenham, 67 Tex. 345, 3 S. W. 309; Grange Warehouse Ass'n v. Owen, 86 Tenn. 355, 7 S. W. 457; Newton v. Newton, 77 Tex. 510, 14 S. W. 157; Howard v. Galbraith, 30 S. W. 689; Wallace v. Stevens, 74 Tex. 560, 12 S. W. 283. In the case of Roberts v. Yarboro, supra, our Supreme Court said:

"1. In the courts of this state there shall be no exclusion of any witness on account of color, nor in civil actions, because he is a party to or interested in the issues tried.

"2. In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other, or any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court.

"The executor or administrator of Yarboro was not a party to this suit, and the prohibition, taken literally, does not support the ruling of the court. There is no ambiguity in the wording of the statute, nor can there be said to be any doubt arising out of the language of the law as to the intention of the Legislature in its enactment. 'It is not for the court to say, where the language of a statute is clear, that it shall be so construed as to embrace cases because no good reason can be assigned why they were excluded from its provisions.' Denn v. Reid, 10 Pet. 526 [9 L. Ed. 519] and see Potter's Dwarris on Statutes, 143–146. If, however, we look to the reason of the law, it will be difficult to pronounce that it applies as fully to a surviving partner as it does to executors, administrators, or guardians. It is well suggested in the brief of appellant that the surviving partner is himself interested in the suit, and has a stimulus to activity and vigilance which is ordinarily wanting in administrators and guardians. For naught that appears, the object of the exception is to protect estates and lands, because of the fact that they are represented imperfectly by agents ordinarily appointed by the law.

"Even if it were admitted that the reason of the law applies with full force to this case, and the attempt be made to extend the statute by construction, so as to embrace surviving partners, it cannot be accomplished without unsettling

settled rules of construction. In Tyson v. Britton, 6 Tex. 224, Chief Justice Hemphill says: 'The Legislature has prescribed a general rule, with special disabilities or privileges, and these cannot be enlarged or extended to objects not embraced in the exception by mere implication or from parity of reason.' To the same effect is the language of Judge Story, in United States v. Dickson, 15 Pet. 165 [10 L. Ed. 689]: 'When the enacting clause is general in its language and objects, and a proviso is afterwards introduced, that proviso is construed strictly, and takes no case out of the enacting clause which does not fall fully within its terms.' The general rule is prescribed by the statute that no witness shall be excluded because he is a party to or interested in the suit. The second section is, in substance, a proviso excepting parties in certain actions from the operation of the rule. The rule as established extends a privilege to parties, while the exception operates to curtail that privilege or right, and should not therefore be extended by construction."

In Wallace v. Stevens, supra, it is said:

"Following well-known rules of construction of statutes, the Supreme Court of this state, in discussing the foregoing statutes, has declared that where a general rule has been established by statute with exceptions, the courts will not curtail the rule or add to the exceptions by implication. Roberts v. Yarboro, 41 Tex. 452."

In Grange Warehouse Co. v. Owen, supra, the Supreme Court of Tennessee, in construing a statute identical with our article 3690, said:

"Under our statute, interest does not disqualify in suits by or against executors, administrators, etc. Exclusion goes only to parties to the suit. It is an exception to the statute removing the disability of interest, and, as such, is to be construed strictly. 'In actions or proceedings by or against executors,' etc., 'neither party shall be allowed to testify against the other.' "

[4] We conclude that the testimony objected to was inadmissible, and should have been excluded, and that if the other evidence in the case, independent of such testimony erroneously admitted, was not such as to require the court to render judgment for the defendants, or, in other words, if such other evidence was not such as would support no other verdict than that found by the jury, the judgment rendered should be reversed, and his case remanded for another trial.

[5] In view of what has been already said, the next inquiry is, Is the evidence in the case, independent of that which we have held was erroneously admitted, such as would admit of only such verdict as was rendered by the jury? Such question can only be answered by a review of the testimony of the witnesses other than the parties to the suit.

J. W. Anderson testified, that he had worked for John Warren, Sr., and John Warren, Jr., for 18 years; that he had known all the Warren family all his life; that John Warren, Sr., and John Warren, Jr., were partners in the stock business; that they told him that they had bought the J. Hudson, George Pembleton, and Walter Wade surveys of land containing 640, 640, and 580 acres, respectively, known as the Turner land, and that they wanted him to sell certain of their horses and mules to pay for said land; that these lands were inclosed in a pasture, and that the firm of Warren used said pasture for the purpose of grazing their stock, cattle, horses, and mules; that he sold some of their stock, and that the Warrens told him that they wanted the money (proceeds of such sale) to pay for the Turner land; that in 1900 he sold about $3,000 worth of cattle for said firm, and turned the money over to John Warren, Sr.; that while he worked for the firm he took fat cattle to the New Orleans market four or five times each year and sold them; that he had conversations with John Warren, Sr., when he worked for them, in which said John Warren, Sr., told him that his son John Warren, Jr., and himself owned all lands at the ranch together, and that he always referred to the whole thing as their place.

T. H. White, for defendant, testified that in 1902 or 1903 he talked to John Warren Sr., and that in such conversation he told him (White) that he and his son had bought a tract of land together; that he and his son John owned several hundred acres across the railroad track.

W. E. Ellis, for defendant, testified that John Warren, Sr., told him that John Warren, Jr., owned a half interest in the land and stock business; that witness is a grandson of John Warren, deceased; that his said grandfather told him that John Warren, Jr., and himself had jointly purchased the land known as the "Turner land"; that he also told him that he and John Warren, Jr., were each one-half owners of the land bought since the wife of John Warren, Sr., died, and in all the stock, but did not mention any particular tracts.

It is shown by the undisputed evidence that the plaintiffs and defendants in this cause instituted, or caused to be instituted, a suit against one Mrs. Goodrich to recover all the real and personal property belonging to the estate of John Warren, Sr., deceased, and that a list of the property belonging to said estate was furnished by them to their attorneys to enable them to file their petition; that the said list so furnished showed that said John Warren, Sr., only owned a one-half undivided interest in the tracts of land in controversy between the plaintiffs in this cause, Mrs. Peil and husband, W. J. Peil, and defendant John Warren, Jr.; that said petition was prepared from the information so furnished and that on the 27th day of November, 1911, a decree was rendered in favor of said parties plaintiff in said Goodrich suit, and that in said decree only a one-half undivided interest in said tracts in controversy was adjudged to belong to the estate of John Warren, Sr., deceased. It was, or seemed to be, conceded at that time that John Warren, Sr., only owned a one-half interest in said lands in controversy, and that John Warren, Jr., owned the other one-half interest therein.

Ben Campbell, now mayor of Houston, for defendant, testified that he knew of the partnership which existed between John Warren, Sr., and John Warren, Jr.; that both of these parties told him several years prior to the institution of this suit, while both were present, that they had, after the death of the wife of John Warren, Sr., bought and jointly owned the following tracts of land: J. Hudson tract of 640 acres; G. N. Kinman tract of 373 acres; George Pembleton tract of 640 acres; Walter Wade tract of 580 acres; and the H. T. & B. R. R. tract of 640 acres; that they owned said tracts jointly, and that at that time he made a memoranda in his own handwriting of the tracts so designated, and that the memoranda shown him at the trial of this case was the list of the property so made by him, and that said memoranda or list of said lands is in his own handwriting; that in that conversation in which said tracts of land were given to him as the joint property of John Warren, Sr., and John Warren, Jr., John Warren Sr., was the principal spokesman, and furnished the list so reduced to writing by said witness; that he never heard any one dispute the fact that John Warren, Jr., owned a one-half undivided interest in said lands with his father, until about the time this suit was brought, although all the parties had discussed the property rights of John Warren, Sr., with him as their attorney. He also testified that some time after the above memoranda was made by him, John Warren, Sr., and John Warren, Jr., jointly purchased the Langerman tract of about 98 acres. This purchase was made in or about the year 1905. This witness testified that he was the attorney for said parties, and that at the time said list of property was given to him by John Warren, Sr., as the joint property of himself and John Warren, Jr., they were informing him as to what properties belonged to the community estate of John Warren, Sr., and his deceased wife, with a view of making a settlement of said estate.

Witnesses Pattillo Higgins and J. R. Jester testified that in negotiating an oil lease of certain lands with John Warren, Sr., he, Warren, refused to make the lease until he could confer with John Warren, Jr., saying that they, John Warren, Sr., and John Warren, Jr., owned the lands together, and that John Warren, Sr., told them that he wanted them to pay one-half of the lease money to him and the other one-half to his son, John, Jr.

The foregoing testimony and evidence stands practically undisputed, and we think demands the rendition of the judgment rendered by the trial court.

We have reached the conclusion that no verdict or judgment other than that reached by the jury and rendered by the trial court could be sustained by the evidence adduced upon trial, independent of the testimony of Eliza Ellis, George Ellis, and John Warren, Jr., parties to the suit, which was admitted over the objection of appellants. Having so concluded, we further conclude that the admission of evidence objected to was harmless, and that the judgment of the trial court should be affirmed; and it is so ordered.

Affirmed.