**HALL et al. v. COLLINS et al.**

No. 5293.

Court of Civil Appeals of Texas. Amarillo.

May 5, 1941.

Rehearing Denied May 6, 1941.

J. Shirley Cook, of Vernon, for appellants.

Hollars & Oswalt, of Vernon, for appellee Nannie Mae Collins.

L. P. Bonner, of Vernon, for appellee S. B. Halford.

FOLLEY, Justice.

This suit is a controversy between the four surviving children of Mrs. Lillie Halford, deceased, involving 640 acres of land in Wilbarger County, Texas, known as the E¼ of Section 44 and the E½ and the SW¼ of Section 45, all in Block 12, H. & T. C. Ry. Co. Survey. The four children consist of two daughters, Mrs. Nannie Mae Collins and Mrs. Sarah Elizabeth Hall, and two sons, S. B. Halford and J. B. Halford, who are the only heirs at law of Mrs. Halford, deceased.

Mrs. Halford's husband died in 1910, at which time it appears that he and Mrs.

Halford owned no real property. Several years thereafter Mrs. Halford purchased the NW¼ of Section 45 in Block 12, which land she owned at the time of her death on December 6, 1935. This one-fourth section is not involved in this controversy except incidentally as shall hereinafter appear. In a settlement of her deceased father's estate Mrs. Halford acquired the other lands hereinabove described as her separate property.

On January 16, 1933 Mrs. Halford by general warranty deeds conveyed the SW¼ of Section 45 to her daughter, Mrs. Sarah Elizabeth Hall and the E¼ of Section 44 and the E½ of Section 45 to her son, J. B. Halford. The consideration recited in each of the deeds was one dollar and love and affection. At the time these two deeds were executed Mrs. Halford was surety on the indebtedness of her other son, S. B. Halford, to the First State Bank of Vernon, Texas, in the sum of about $6,000. Also at such time the other daughter, Mrs. Nannie Mae Collins, had been absent from Wilbarger County for about two years. There was proof to the effect that her whereabouts were unknown to her Wilbarger County relatives, they thinking her to be dead. Mrs. Collins, however, resided in Dallas County, Texas, from 1931 until 1937, when she learned that her mother had died in 1935, whereupon she returned to Wilbarger County.

Mrs. Halford died intestate and Mrs. Hall was appointed administratrix of her estate by the County Court of Wilbarger County. Such administration is still pending. The only real property listed in the inventory and appraisement of the estate of the deceased is the NW¼ of Section 45 which was owned by Mrs. Halford at the time of her death and against which there is an indebtedness of about $5,000. This indebtedness is the balance due upon the original debt of S. B. Halford to the First State Bank, which indebtedness is now held by Mary Schmoker and is secured by a deed of trust executed by the administratrix upon the 160 acres of land inventoried in the estate of Mrs. Halford.

With the above factual background this suit was filed by Nannie Mae Collins against her sister, Mrs. Hall, and her two brothers, S. B. Halford and J. B. Halford. Mrs. Hall being under coverture, her husband, William M. Hall, was also a defendant in this suit. Mrs. Collins sought recovery from her sister and brothers of a one-fourth undivided interest in the 160 acres of land deeded to Mrs. Hall and the 480 acres of land deeded to J. B. Halford. She alleged that she and the other three children were all the children and heirs at law of Mrs. Halford, deceased; that they were each the joint owners in fee simple of an undivided one-fourth interest in the 640 acres of land conveyed by her mother to Mrs. Hall and J. B. Halford; that Mrs. Halford at the time of her death was seized and possessed of the land in controversy; that on January 16, 1933, at the suggestion and persuasion of Sarah Elizabeth Hall and J. B. Halford, Mrs. Lillie Halford did execute and deliver to Sarah Elizabeth Hall a warranty deed purporting to convey the fee simple title to the SW¼ of Survey 45; that such land was conveyed to Mrs. Hall in trust for the use and benefit of Mrs. Lillie Halford upon the assurance that Mrs. Hall would reconvey such land to Mrs. Halford; that at such time Sarah Elizabeth Hall advised, requested and persuaded her mother not to record the deed of reconveyance in order that the apparent ownership of such land would be shown in Mrs. Hall; that no valid consideration was paid for such land; that at the time the land was conveyed to Mrs. Hall, the latter, joined by her husband, executed and delivered to Mrs. Halford a deed in writing reconveying such land to Mrs. Halford; that under the same circumstances and representations Mrs. Halford at the same time conveyed to J. B. Halford the E¼ of Section 44 and the E½ of Section 45, the latter promising to hold the same in trust for Mrs. Halford and her estate; that J. B. Halford executed a deed reconveying such land to Mrs. Halford with the understanding that such deed of reconveyance should not be recorded; that Mrs. Hall and J. B. Halford were in possession of the deeds reconveying the property to their mother and notice was given for them to produce such deeds or parol testimony would be offered to show their contents; that Mrs. Hall was wrongfully and fraudulently withholding such lands from proper inventory and appraisement of the estate of Lillie Halford, deceased; that in 1928 and subsequent years S. B. Halford became involved in financial difficulties and that Mrs. Lillie Halford advanced large sums of money to him in excess of $6,000; that such advancements were made with the understanding that they should be charged to his share of his mother's estate; that the petitioner was absent from Wilbarger County when the

transactions were made between her mother and Mrs. Hall and J. B. Halford; that they did not know her whereabouts and believed her to be deceased; and that at the time such deeds were executed it was agreed and understood by and between the parties that she was to receive her portion of the property if she were alive. Mrs. Collins prayed that the deeds conveying the land to Mrs. Hall and J. B. Halford be cancelled; that all the land be decreed the property of the estate of Lillie Halford, deceased, and partitioned between the four children; that any advancements received by any of the other three children be charged against his interest in the estate; and that Mrs. Hall and J. B. Halford be required to render an accounting.

Sarah Elizabeth Hall and her husband and J. B. Halford answered by general demurrer and general denial and a special plea of limitation of four years as against Mrs. Collins' right to cancel the deeds.

S. B. Halford filed an answer and cross-action against the other defendants in which he made substantially the same allegations as did Mrs. Collins. In addition to this, he further alleged that he became indebted to the First State Bank of Vernon for about $6,000; that such indebtedness was secured by a mortgage on certain real estate of his own; that the bank desired further security and insisted that his mother sign his note and give the bank a deed of trust on the NW¼ of Section 45, which she did; that he had reduced such indebtedness to about $4,750; that a new loan in the sum of $5,000 was obtained from Mary Schmoker to take up the indebtedness held by the bank and extend the time of payment; that before the latter loan was made Sarah Elizabeth Hall required him to convey to her his one-fourth interest in the 160 acre tract mortgaged to secure such loan; that there was no consideration for such conveyance; that Mrs. Hall agreed to reconvey such one-fourth interest to him upon the payment of such indebtedness; that the $5,000 debt was a just charge against his interest in his mother's estate; that after his mother signed his note and gave the lien on her land as security his sister, Mrs. Hall, and his brother, J. B. Halford, continuously and persistently counseled his mother to convey all of her property over to them in trust so they could protect her against further encumbering the same at the instance of S. B. Halford; and that he was not otherwise indebted to the estate except as confessed by him. He also prayed that the deeds conveying the land to Mrs. Hall and J. B. Halford be cancelled; that such lands be declared the property of the estate of Lillie Halford and inventoried as such; that all of the property of such estate be divided and partitioned between the four children; that each heir be charged with all obligations legally chargeable to him or her; and that his deed to Mrs. Hall for his one-fourth interest in the NW¼ of Section 45 be cancelled and that a full accounting be had between all of the parties.

Upon special issues submitted the jury found, in effect, that the land in controversy was deeded to Mrs. Hall and J. B. Halford in trust for the benefit of all the children in equal shares; that such deeds were executed upon the agreement that the respective grantees would reconvey the land to Mrs. Halford; that deeds reconveying such land to Mrs. Halford were executed by the respective grantees and delivered to Mrs. Halford; and that since the date of the deeds conveying the land from Mrs. Halford to Mrs. Hall and J. B. Halford neither of the respective grantees had claimed such land as his own. Upon this verdict the court rendered judgment that Mrs. Collins and S. B. Halford each recover from the other three children respectively an undivided one-fourth interest in the 640 acres of land in controversy. It was further adjudged that the deeds conveying the land to Mrs. Hall and J. B. Halford be cancelled and that the title be divested out of each of them except for an undivided one-fourth interest in all of the land. The court also decreed that the deed from S. B. Halford to Mrs. Hall purporting to convey an undivided one-fourth interest in the NW¼ of Section 45 was in fact a mortgage to secure the payment of a $5,000 loan in favor of Mary Schmoker and ordered that upon the payment of such indebtedness the deed be cancelled. The latter tract of land was not otherwise affected by the judgment. A one-fifth interest of the recovery of Mrs. Collins was decreed in favor of her attorney. From this judgment the appellants, Mrs. Hall, her husband and J. B. Halford, have prosecuted this appeal.

The controlling issue in this case involves the court's action in permitting S. B. Halford to testify over appellants' objection to certain conversations, agreements and transactions between him, his mother,

Mrs. Hall and J. B. Halford with reference to the execution and delivery of the deeds conveying the land in controversy to Mrs. Hall and J. B. Halford. Such testimony was to the effect that Mrs. Hall and J. B. Halford had learned about his mother signing his note at the bank and began complaining about it to Mrs. Halford; that he went out to his mother's place near Vernon and she was crying; that his mother told him Mrs. Hall had come out there "and just eat her out again about me signing those papers with you, and wanted me to do something with the rest of the property"; that he told her rather than have her molested he desired her to make it satisfactory some way; that she agreed she would do that; that later when he, Mrs. Hall, J. B. Halford and his mother were present, "we agreed, to keep me from going any further or destroying any more of the property, they called it, to make a double set of deeds so that it would convey it back to my mother's estate, and that would be satisfactory with them, and that they would provide equally and share equally with my sister, Nannie Mae Collins or her heirs, if she were dead—we hadn't heard from her—and so we agreed to do that"; that his mother and J. B. Halford and Mrs. Hall agreed to such arrangement; that after this agreement was made he and his mother came to town and talked to Hy Rogers; that his mother told Mr. Rogers what she wanted to do; that she told him she wanted a double set of deeds made; that she wanted one set of deeds made to show title in Mrs. Hall and J. B. Halford so that she would not be responsible for any indebtedness that the witness might "cause her to get into later on"; that the other set of deeds would be made to offset the others; that both sets of deeds were made by Hy Rogers at the same time; that about a week later his mother showed him a deed to her from J. B. Halford and the latter's wife; and that his mother told him that "she did that because she wanted to have a little peace, to start with, and that she had wanted * * * the property all equally divided, and she wanted to have something for all of us so that all of us would share an equal part in it, and in case Nannie Mae Collins should show up, that her heirs, she wanted them to have her share of it".

The above testimony was substantially all the testimony offered seeking to establish the alleged parol trust and the verdict of the jury and the judgment of the court were necessarily based almost solely upon it.

The appellants objected to the above evidence from the witness S. B. Halford upon the ground it was in violation of article 3716, R.C.S. of 1925, relative to transactions with, and statements of, the deceased, asserting that both Mrs. Collins and S. B. Halford were attempting to recover as heirs of their deceased mother. The appellees seek to escape the binding effect of such statute upon three grounds. They first contend that the witness S. B. Halford, being a defendant in the trial court, was an opposite party from the plaintiff, Mrs. Collins, and was called by her to testify as such a party. Secondly, they assert that the appellants waived the prohibition of the statute by their cross-examination of such witness. Thirdly, they assert that the appellees were not attempting to recover as heirs of their mother but upon the contrary sought recovery under a parol trust created in their favor by their mother.

■ We think in the interpretation of the statute it is immaterial that Mrs. Collins was a plaintiff and S. B. Halford a defendant in the trial court. In applying the statutory rule the courts will consider the nature of the suit and the relative interest of the party rather than the position he may happen to occupy on the record. 12 Encyclopedia of Evidence 762. It has been settled in this State that when it appears "that the interests of parties nominally arrayed on opposite sides are in fact identical or allied, neither party will be permitted to call the other to testify as to a transaction with the decedent". 14 Tex. Jur. 330, para. 544; Rascoe v. Walker-Smith Co., 98 Tex. 565, 86 S.W. 728; James et al. v. James et al., 81 Tex. 373, 16 S.W. 1087. In the case at bar it is apparent that in so far as the recovery of the interest in the land in controversy is concerned the claims of Mrs. Collins and S. B. Halford are allied and parallel. We therefore hold that the witness S. B. Halford was not an opposite party to Mrs. Collins within the meaning of the statute.

■ We are also not impressed with the contention of the appellees that the appellants waived the prohibition of the statute by cross-examination of S. B. Halford, if such a cross-examination would constitute a waiver, which question we are not required to decide. Sullivan et al. v. Fant et ux., 51 Tex.Civ.App. 6, 110 S.W. 507, writ

342

refused; Cathey v. Missouri, K. & T. Ry. Co. of Texas, 104 Tex. 39, 133 S.W. 417, 33 L.R.A.,N.S., 103; Trinity & B. V. Ry. Co. et al. v. Johnson, 62 Tex.Civ.App. 605, 131 S.W. 1137; Freeman v. Grashel, Tex.Civ. App., 145 S.W. 695, writ denied; Porter et al. v. Rogers et al., Tex.Civ.App., 293 S.W. 577, writ refused; see also Trial Texas Digest. It will be seen from the authorities cited that the courts are not uniform in their holdings on this question, but regardless of which rule is correct there was in this case no cross-examination as to the statements made by the deceased nor of any fact or circumstance tending to establish a parol trust in favor of the appellees; and there was no similar testimony offered from any other witness. We are therefore convinced there was no waiver of this issue by the appellants.

 The only remaining question for our disposal is whether or not the appellees were suing as heirs or were seeking recovery solely upon the theory of a parol trust. The appellees assert they were seeking no recovery as heirs but only upon the alleged trust, and were therefore within the rule expressed in Porter et al. v. Rogers et al., Tex.Civ.App., 293 S.W. 577, writ refused, and in Lassiter v. Bouche et al., Tex.Com. App., 14 S.W.2d 808. We cannot agree with this contention. We think each of the cases referred to is authority for the proposition that the statute does not apply where the claimant is seeking to recover independently of the fact that he is an heir of a decedent. In the first case the plaintiff was attempting to establish a parol trust, while in the second case the recovery was predicated upon a deed from the deceased. In neither of such cases was the suit brought by the claimants as heirs of the deceased, nor was there any right or title to the property involved asserted by virtue of heirship. In either case recovery would have been possible had the respective claimants been unrelated to the deceased. Such is not true under the pleadings or the evidence of the instant case. It will be noted that the appellees assert in their pleadings that their mother died seized and possessed of the property herein involved. They sought to have the deeds conveying the property to the appellants cancelled and the land decreed to be the property of the estate of Lillie Halford, deceased, and partitioned as such between the four children who are alleged to be the only heirs of the deceased. Moreover, the cause of action

of the appellees is based upon the theory that the land in controversy was reconveyed to the deceased. If this is true, and the appellees are in no position to dispute it, the land was owned by the deceased at the time of her death and the only interest either of the appellees could have in it would be by virtue of heirship. We therefore conclude that the court erred in admitting the above testimony from S. B. Halford. McKibban et al. v. Scott et al., 131 Tex. 182, 114 S.W.2d 213, 115 A.L.R. 1421; Edelstein v. Brown et al., 100 Tex. 403, 100 S.W. 129, 123 Am.St.Rep. 816; Holland v. Nimitz et al., 111 Tex. 419, 232 S.W. 298, 239 S.W. 185; Parks et al. v. Caudle et ux., 58 Tex. 216; North et al. v. North, Tex.Civ.App., 2 S.W.2d 481; Davis et al. v. Davis et al., 44 Tex.Civ.App. 238, 98 S.W. 198, writ refused; Haley v. Lee et al., Tex.Civ.App., 241 S.W. 567; Peil et al. v. Warren, Jr. et al., Tex.Civ.App., 187 S. W. 1052, writ refused; Smith's Heirs v. Hirsch et al., Tex.Civ.App., 197 S.W. 754, writ refused; Colvard v. Goodwin et al., Tex.Civ.App., 24 S.W.2d 786; Stewart et al. v. Miller et al., Tex.Civ.App., 271 S.W. 311, writ refused; Nesbitt v. First Nat. Bank of San Angelo et al., Tex.Civ.App., 108 S.W.2d 318; Ivy v. Ivy et al., Tex.Civ. App., 128 S.W. 682; Roth et al. v. Schroeter et al., Tex.Civ.App., 129 S.W. 203, writ refused; Wootters v. Hale, 83 Tex. 563, 19 S.W. 134.

The judgment of the trial court is reversed and the cause remanded.