Joe VARNELL, Appellant,

v.

A. O. GLEICH, Administrator, Appellee.
No. 5036.

Court of Civil Appeals of Texas.

Beaumont.

Jan. 20, 1955.

Motion for Rehearing Overruled
Feb. 9, 1955.

Robert Liles, Conroe, for appellant.

Arnold Smith, Conroe, for appellee.

R. L. MURRAY, Chief Justice.

This is an appeal by Joe Varnell from a judgment in the Special 9th District Court of Montgomery County, denying him recovery from appellee A. O. Gleich, administrator of the estate of Bertha Gleich, deceased.

The appellant Varnell alleged that on September 10, 1949, he advanced and loaned to Bertha Gleich, now deceased, $7,000 and that as evidence of such indebtedness Bertha Gleich drew a draft upon Joe Varnell for the sum of $7,000, which draft was duly paid on presentation to his bank, the United States National Bank of Galveston. He further alleged that Bertha Gleich died August 3, 1953, and A. O. Gleich was the duly appointed qualified and acting administrator of her estate. He further alleged that the said money and no part thereof had ever been paid to him; that he duly presented his claim for said debt to the said administrator, which claim was rejected by him.

The administrator answered by plea of two-year limitation, four-year limitation, general denial and further pleaded the coverture of the deceased, alleging that before and at the time the appellant alleged that she drew said draft she was the wife of the said A. O. Gleich and was living with him as his wife until the date of

her death; that her disabilities as a married woman had not been removed and such implied promise to pay said defendant, if any there was, was not for necessities furnished Bertha Gleich for her children, nor incurred in the management of her separate estate.

The appellant by a supplemental petition excepted to the plea of coverture, alleging that the plea of coverture is personal to a married woman herself and cannot be asserted by the administrator of her estate; he further alleged by way of supplemental petition that the money he loaned to Bertha Gleich was used by her for and constituted the purchase price of the Cafe 75 operated by the deceased and A. O. Gleich; that by virtue thereof he should have an equitable lien and that said Cafe 75 had been sold by the administrator under the proper orders of the Probate Court, and that the appellant should have a first lien upon the proceeds of such sale to satisfy any judgment which might be awarded him for his debt.

Two other cases between the appellant Varnell and appellee Gleich as administrator were pending in the same court, being suits for funeral expenses and a burial plot paid for by the appellant and for cost of a monument erected at the grave site, and for services rendered by Varnell in connection with the operation of said Cafe 75. The court consolidated all three cases and they were tried together before the court without the aid of a jury. The court rendered judgment awarding Varnell $1,568.50 for funeral expenses and $63 for the burial plot and denied any recovery on his claim for services rendered and the costs of the burial monument. The judgment also refused Varnell any recovery on his suit for the $7,000 alleged to be a loan. It is from this latter portion of the judgment alone that the appeal is taken.

By his first Point of Error the appellant contends that the trial court erred in refusing to permit him, on the trial of the case, to testify to the facts surrounding the loan made by the appellant to the deceased, after the appellant as a witness had been cross examined by appellee's counsel, which cross examination appellant asserts was with respect to parts of the transaction surrounding the loan. The controversy arises from the following incidents occurring on the trial while appellant Varnell was testifying as a witness: He testified that he lived in Galveston, that Bertha Gleich was his step-daughter, he married her mother when she was 11 years old and "they raised her." "A. O. Gleich was her second husband, she first married another man, she had the name of Mrs. Gleich, in 1949 she was divorced from Gleich and she never married any more. If they ever lived together as man and wife I never did see it; I never did see him with her * * *." "Q. All right, sir, other than the amount for which you sue in the amount of $7,000, state whether or not Mrs. Bertha Gleich was indebted to you in any form whatsoever. A. She was indebted—." Objection was made that such testimony was not admissible under the "dead man's statute." Appellant's attorney argued that he was not asking about the transaction but if she owed money. The court sustained the objection. Then the following questions and answers:

"Q. Just forget the $7,000. Drop that for the time being. At the time of that instrument was she indebted to you for any money whatsoever? A. No, sir. Just the $7,000.

"Q. Have you ever seen Mrs. Gleich's signature before? A. Yes, sir.

"Q. Whose signature appears there? A. This is hers, all right."

On cross examination the witness was asked many questions about the funeral arrangements, purchase of the casket, the tombstone and the funeral plot and then followed the recross examination:

"Q. I want to ask you one more question, Mr. Varnell, in regard to the $7,000.00 which you have stated— which you have sued upon—is it not

true that after Mrs. Gleich's death that you have made the statement that the greater sum of that money has been paid? A. No, sir.

"Q. Forgetting the 'greater part', did you make the statement that $7,000.00 had been paid? A. No.

"Q. Have you made the statement that a portion of it had been paid? A. If you will let me, I will explain that.

"Q. I just want to know if you said a part of it had been paid. A. All the money that I ever got from her was $335.00 in silver dollars under a Christmas tree wrapped up in a box; and it was my Christmas present from her.

"Q. It was not a part payment on this loan? A. And another year I had a hundred dollar bill in an envelope on the Christmas tree; and on my last birthday, August 12th—the August before that, previous to her death, there was a mail box with $84.00 or $83.00 worth of dimes in it for my birthday. That's all the money I ever got from her. I don't know whether she considered it a payment on the loan, but I considered it a present—Christmas present and my birthday.

"Q. Your testimony is that no payments have been made on it? A. There have been no payments.

"Mr. Smith: I believe that's all.

"Mr. Liles: He has opened the gates. Come around again Mr. Varnell."

Redirect Examination of Mr. Joe Varnell

"By Mr. Liles: Q. Mr. Varnell, will you please tell the court the circumstances surrounding the payment by you of the $7,000.00 draft drawn upon you? A. You mean why it was paid?

"Q. Why it was paid."

Objection was then made that counsel for the appellant was attempting to go into the matter of the alleged loan to Mrs. Gleich by the appellant which would be in violation of what is commonly called the "dead man's statute." The court sustained the objection and for the purpose of a Bill of Exceptions the appellant was permitted to testify as to the circumstances under which he paid the $7,000 draft in favor of Mrs. Gleich when it was presented to his bank in Galveston. He testified that she wanted it to use it as the purchase price of Cafe 75 at Conroe, that she shortly thereafter bought said cafe and she told him some time later that she was doing well and would pay him.

The appellant under his first point contends that counsel for the appellee, by asking the questions set out above on recross examination "called the appellant to testify in regard thereto" and that therefore and thereby the provisions of Article 3716, Vernon's Annotated Civil Statutes of Texas, commonly called the "dead man's statute", were waived. He relies upon Himes v. Himes, Tex.Civ.App., 55 S.W.2d 181, 184; Huggins v. Myers, Tex. Civ.App., 30 S.W.2d 565; Grathaus v. White, 72 Tex. 124, 11 S.W. 1032; Watson v. Dodson, 57 Tex.Civ.App. 32, 121 S.W. 209.

■ It is undoubtedly true that the testimony sought to be elicited from Mr. Varnell, as shown by the bill of exceptions, was in regard to a transaction with the deceased and was prohibited by said Article 3716. It is a well established rule, of course, that a litigant may waive the operation of this statute, either intentionally or unintentionally, by calling upon a person to testify in regard to the matters prohibited by the statute. The question here for determination is whether the questions asked Mr. Varnell in the recross examination should be considered as calling him to testify about the transaction with Mrs. Gleich on which his suit was founded. We do not believe that it should be so considered. Counsel for the appellee had previously made objection to any testimony by

Mr. Varnell as to any indebtedness due him by Mrs. Gleich and the court sustained the objection. The witness proceeded thereafter to testify in the manner set out above. Counsel for appellee asked him if he had not made the statement, after Mrs. Gleich's death, that the greater sum of the money had been paid, then he asked him whether he made the statement that a portion of it had been paid, and then after receiving an answer reciting a number of extraneous facts the last question was asked, "Your testimony is that no payments have been made on it." This question when considered alone might appear to be an inquiry in regard to some feature of the transaction between Mrs. Gleich and Mr. Varnell, but when it is viewed in connection with the other questions which came immediately before, it is clearly an inquiry as to whether the witness had ever made the statement after the death of the deceased that payment had been made. The question by counsel for appellee did not even suggest an inquiry about any of the circumstances surrounding the alleged loan of $7,000 or the purchase of Cafe 75, or the statement by Mrs. Gleich that she was doing well and would pay him back. It must have been apparent to counsel for both parties and to the trial judge at that stage of the trial that the appellant had made no proof whatsoever that the draft of $7,000 was for a loan to her. It is unbelievable that counsel would have willingly made any inquiry of the witness, testifying in his own behalf, in regard to the inhibited field of inquiry which would operate as a waiver and thus permit him to prove his case. The answers made to the questions on recross examination were not entirely responsive to the questions themselves and it is understandable that the exact tenor of the group of questions pertaining to statements made by Varnell after the death of Mrs. Gleich was lost sight of by both witness and counsel. We do not believe that the questions served as a waiver and the trial court did not err in sustaining the objection to the testimony tendered. See Stanley v. Stanley, Tex.Civ. App., 139 S.W.2d 876; Hall v. Collins, Tex.Civ.App., 151 S.W.2d 338, error ref.

Appellant's second point is that the trial court erred in holding that the defense of coverture of the deceased could be raised by her administrator. Under this point the appellant recognizes the general rule to be that where an executor or an administrator is sued in his representative capacity he may set up any defense that was available to his decedent. He argues that the plea of coverture, however, is personal to a married woman herself and cannot be interposed in her behalf by anyone else. There is a dearth of authorities on this matter, and no decision by the courts of this state is directly in point. Simpkins, Administration of Estates in Texas, page 284, is authority for this general proposition, "The executor or administrator must make all defenses to a suit brought on a rejected claim that could have been made by the testator or intestate, and such defenses as may be set up by virtue of his office." The administrator is generally held to "stand in the shoes of his decedent." With this general rule in mind we hold that the administrator was empowered to interpose the coverture of Mrs. Gleich as a defense to Varnell's suit. She could have made such a defense had such suit been brought against her during her lifetime. It is true that such a contract by a married woman is not void but merely voidable and she may have desired, for reasons satisfactory to her, not to resist such a claim by raising the plea of coverture, if sued during her life. The administrator, however, has no such choice and is required to make all defenses in behalf of her estate which she could have made. There is nothing in the judgment of the trial court to indicate that the trial court overruled or sustained the appellant's exception to the coverture. However, since the judgment denied the appellant recovery in his suit on the $7,000 claim and coverture was one of the defenses pleaded by the appellee, it seems proper that we make the above holding. Appellant's second point is overruled.

No error is shown in the judgment of the trial court, and it is accordingly affirmed.