**Mrs. Jalah Moore LEACH et al., Appellants,**

**v.**

**ESTATE of E. C. CASSITY et al., Appellees.**

No. 15619.

Court of Civil Appeals of Texas.

Fort Worth.

May 13, 1955.

Rehearing Denied June 10, 1955.

Frank R. Graves, Fort Worth, for appellants.

O. M. Stubblefield, Dallas, and Carlisle Cravens, Fort Worth, for appellees.

MASSEY, Chief Justice.

Mrs. Jalah Moore Leach and Mrs. Mary Jane Peterson were children of Mrs. Jalah Puckett, an heir of E. C. Cassity, deceased, and the administratrix of his estate. They sued their mother, individually and as administratrix, and all the other heirs and assignees of heirs, in trespass to try title, and to impress a parol trust on certain real property of the estate. Certain of the defendants jointly filed a motion for summary judgment, upon which hearing was had and judgment as prayed for entered. Upon rendition of this judgment, the plaintiffs announced ready for trial against the two defendants, who, though served with citation, had defaulted, and the defendant who had filed a disclaimer. The trial court rendered judgment for these defendants. A single form of judgment covering both elements was prepared and entered. From judgment in both respects, as summarily entered and as entered on the merits, the plaintiffs appealed.

Summary judgment affirmed.

Judgment on the merits in part reversed and remanded, and in part reversed and rendered.

E. C. (Elbert) Cassity, a single man, died intestate in May, 1952. His sister, Mrs. Jalah Puckett, a widow, qualified and was appointed administratrix of his estate pending in the Probate Court of Tarrant County, Texas. The deceased left eight heirs or sets of heirs surviving him, to-wit: Mrs. Jalah Puckett, administratrix, a sister, Mrs. Arye Lewis, a sister, Hobert Cassity, a brother, Cabert Cassity, a brother, Joe Cassity, a brother,—Nannette Prata, sole child of a deceased sister, Frona McLaughlin and Mary Simmons, children of a deceased sister, and some heirs comprised of children and grandchildren of another deceased sister. This last designated deceased sister had three children, one of whom was dead, leaving two children, Floyd Greene and June Greene Ayalla. Her two living children were Charles J. Greene and Lindsay M. Greene. Charles J. Greene had, prior to the instant litigation, transferred his interest in the estate of the deceased to Fern Cassity, widow of a son of one of the deceased brothers. In like manner at the same time, Lindsay M. Greene transferred his interest in the estate to Frona McLaughlin and Mary Simmons.

Mrs. Jalah Puckett had two daughters, to-wit: Mrs. Jalah Moore Leach, a feme sole, and Mrs. Mary Jane Peterson, a married woman. They were the plaintiffs in this suit. Mrs. Puckett's deceased husband, father of these two girls, died in 1937. The two girls, then in their teens, resided with their mother. About that time, E. C. Cassity, the deceased, started living, at least part time, with Mrs. Jalah Puckett and her two daughters. While so doing, he acquired certain real estate, of which he died seized and possessed.

On January 28, 1954, Mrs. Leach and Mrs. Peterson, the latter joined by her husband, filed a trespass to try title suit against their mother, as administratrix and also individually, and against all the other heirs of E. C. Cassity, the deceased, alleging that they were the owners in fee simple, entitled to certain real estate described and identified, situated in Tarrant County, Texas, and certain real estate situated in Dallas County, Texas, said lands constituting part of said deceased's estate.

The allegations of plaintiffs' petition were to the effect that the deceased, through an agreement with their mother, the administratrix, in or about the year 1938, used funds belonging to the plaintiffs in the acquisition of the lands in Tarrant and Dallas Counties, taking record title to same in his own name but with the understanding that title to said lands belonged to the plaintiffs. Further allegations were to the effect that at the time the plaintiffs' funds were used by the deceased, he agreed to transfer record title to plaintiffs during his lifetime, which was never done, and that he would make a will devising title to the said properties to the plaintiffs, which he did not do. Plaintiffs alleged that they were entitled to judgment declaring that the deceased held title to said lands in trust and that the lands belonged to them, and they were entitled to an accounting for

rents and revenues received by their mother, as administratrix. Their prayer was in accord with these allegations.

One of the defendants, Mrs. Arye Lewis, filed a waiver and disclaimer of any interest in or to the lands which were the subject matter of the suit. No answer was filed by either the defendant Hobert Cassity or by Mrs. Jalah Puckett, the mother of the plaintiffs.

All the other heirs and persons interested in the estate answered with pleas of not guilty; setting up pleas of limitation, and further denying the allegations in the petition; pleading statute of frauds; defenses incident to the Texas Trust Act; that plaintiffs were guilty of laches; waiver and estoppel; that Mrs. Jalah Puckett, administratrix of the deceased's estate, was acting in collusion with the plaintiffs for the purpose of depriving defendants of their inheritance as heirs of the deceased and of their right, title and interest in and to the lands which were the subject of litigation, and pointing out that any attempt on her part to testify in behalf of the plaintiffs in connection with the transactions with the deceased would be repugnant to and in conflict with Article 3716, V.A.T.S., commonly called the "dead man's statute".

These said defendants (Mrs. Jalah Puckett, administratrix, Hobert Cassity and Mrs. Arye Lewis not being among them) moved for summary judgment with the prayer that plaintiffs take nothing by their suit. They attached to their motion the affidavit of Lindsay M. Greene, who, as previously noted, was originally an heir but who had assigned and disposed of any interest he might have had in and to the lands in controversy. Also attached to their motion was the affidavit of Thomas S. Walker, officer of the Dallas Federal Savings & Loan Association, which Association carried a loan for the deceased upon the Tarrant County property, or a part thereof, upon deceased's representation and warranty that he was the owner thereof, had made a deed of trust reflecting his sole ownership, etc.

Proper notices having been served, procedure culminated in a hearing before the trial court upon this motion for summary judgment. Entry of summary judgment, as prayed for by said defendants, was effected on date of October 28, 1954. Upon the summary judgment hearing, the plaintiffs, as the non-moving parties, tendered the counter-affidavit of Mrs. Jalah Puckett, their mother, administratrix of the estate of the deceased, and a defendant to their suit. The moving parties, anticipating in advance that such would be the case, objected to its reception and consideration as being in violation of the "dead man's statute". The trial court sustained the objection and refused to admit and consider Mrs. Puckett's testimony as valid and proper evidence upon the motion for summary judgment.

In addition to said evidence, so stricken, plaintiffs tendered the affidavit of Homer D. Puckett, uncle of the plaintiffs, and that of his wife, Ruth Puckett. The affidavits of Homer D. Puckett and his wife were to the effect that each of them was acquainted with the deceased during his lifetime and that from their intimate acquaintance with the deceased and Mrs. Jalah Puckett and from various and sundry conversations with them, it was their understanding that there was a financial arrangement between them whereby any monies belonging to the two girls were to be invested by the deceased in real estate for their benefit.

Holding that no material issue of fact was raised by any evidence tendered by the plaintiffs, the trial court granted the defendants' motion and entered summary judgment. Immediately thereafter, the plaintiffs moved for judgment in accordance with their petition as against the defendants, Mrs. Jalah Puckett, individually and as Administratrix, Mrs. Arye Lewis and Hobert Cassity. The trial judge refused to enter such requested judgment against said defendants (two of whom had defaulted and filed no answer, and one of whom, Mrs. Lewis, had filed a waiver and disclaimer), and proceeded to decree that plaintiffs take nothing by their suit against them in the same judgment decree that was entered for

the other defendants upon the summary proceedings.

To the foregoing action on the part of the court, both as applied to the award of summary judgment and as to the entry of a take-nothing judgment in behalf of those defendants who were not parties to the summary judgment proceedings, the plaintiffs perfected this appeal.

Upon the appeal, as related to the summary judgment, plaintiff-appellants make no complaint of the trial court's consideration of the affidavit of Lindsay M. Greene, which was attached to and in support of the defendants' motion for summary judgment. The testimony of said witness, as reflected in his affidavit, if not controverted, is sufficient to support the action of the court in granting the summary judgment. The basic contention of the plaintiffs is that the trial court erred in its holding that the affidavits they tendered in resistance to the defendants' motion failed in the demonstration of the existence of any genuine issue as to any material fact.

■ If the trial court was correct in the refusal to consider the evidence of Mrs. Jalah Puckett (objected to in advance by the defendants who moved for the summary judgment), our problem upon the appeal is simplified. We are of the opinion that such action by the trial court was proper. A very informative opinion on the point is to be found in Hall v. Collins, 1941, Tex.Civ. App., Amarillo, 151 S.W.2d 338, 341, error refused. In that case, a Mrs. Collins sued her sister (also administratrix) and brothers, one of whom was S. B. Halford, seeking to cancel certain deeds of record from the deceased ancestor to her sister, the administratrix, and another brother, J. B. Halford. Upon the trial, Mrs. Collins called S. B. Halford to the stand as an opposite party and he testified relative to transactions with the deceased over the objection of all the other defendants. The other defendants contended that the testimony of S. B. Halford was in violation of Article 3716, the "dead man's statute", since the establishment of Mrs. Collins' alleged parol trust was necessarily based almost solely upon his testimony. The Court of Civil Appeals reversed the judgment of the trial court in favor of Mrs. Collins and remanded the cause,—holding that in applying the rule of the statute courts will consider the nature of the suit and the relative interest of the party whose testimony is offered, rather than the position he may happen to occupy on the record. The author of the opinion observed that when it appears "'that the interests of parties nominally arrayed on opposite sides are in fact identical or allied, neither party will be permitted to call the other to testify as to a transaction with the decedent'. 14 Tex.Jur. 330, para. 544; Rascoe v. Walker-Smith Co., 98 Tex. 565, 86 S.W. 728; James v. James, 81 Tex. 373, 16 S.W. 1087."

In the case at bar, it is apparent that in so far as any recovery by the plaintiffs of the interests in the lands in controversy is concerned, the interest of Mrs. Jalah Puckett is in fact allied with or subverted to that of her daughters. We therefore believe that any consideration of her testimony over objection, in connection with this proceeding in summary judgment, would be error the same as it would have been had it been tendered over a like objection upon a trial of the merits, as in the case of Hall v. Collins, supra.

■ The affidavits of Mr. and Mrs. Homer D. Puckett, tendered by the plaintiffs, fail to comply with Rule 166–A, sub. (e), T.R.C.P., relative to summary judgments. The Rule requires that affidavits, whether supporting or opposing the motion, shall set forth facts which would be admissible in evidence were there a trial on the merits. The tendered affidavits present conclusions on the part of the affiants rather than testimony of fact. As such, they would raise no issue of fact.

At the stage of the summary judgment proceedings when the plaintiffs became aware that the trial court would hold their controverting or opposing affidavits insufficient for the purpose tendered, they were afforded by Rule 166–A, sub. (f), T.R.C.P.,

the privilege of making a motion for a continuance if they could or would state or present by affidavit some reason warranting delay, as, for instance, had they shown the court that with more time they would be able to secure affidavits from some other witness to substantiate their position, taken in reliance upon the admissibility of Mrs. Jalah Puckett's affidavit. There having been no motion to this effect made, the plaintiffs obviously chose to stand upon the propriety of the affidavits which they did tender in opposition. These only are before us for appropriate test, and in view of their failure as evidence, plaintiffs are in the position of a non-moving party presenting no evidence upon a summary judgment hearing.

■ That being the situation, we are obliged to view the propriety of the judgment in the light of the most important opinion of Sparkman v. McWhirter, Tex. Civ.App., Dallas, 1953, 263 S.W.2d 832, error refused. In that case, Judge Towne Young squarely posed the problem facing the trial courts to whom a motion for summary judgment, adequately supported by affidavits, is presented, and where the non-moving party does not present or tender any counter-affidavit or extrinsic evidence. *Do the issues created on the pleading prevent rendition of a summary judgment?* The author of the opinion then holds in accord with the reasoning of Hon. Roy McDonald (author of McDonald, Texas Civil Practice) in his article appearing in 30 T.L.R., p. 297, language from which we quote: "There are federal cases which give an affirmative answer. It has been held that where the respondent's pleading was verified, contrary statements in the movant's affidavits need not be accepted as established. An argument of some plausibility can be erected in support of this view. But to have any validity, this argument must rest on two questionable assumptions: first, that the factual detail in the pleading is as precise as it would be in a counter-affidavit; and second, that the verification of the pleading is taken as seriously as is the verification of special affidavits submitted on motion. Experience does not

persuade this writer that either assumption is valid." In short, an affidavit opposing a *motion for summary judgment must meet* the requirements of Rule 166–A, sub. (e), a mere general denial likewise being insufficient. See Comments by Lemond and Kreager, Vol. 30, Tex.Law Review, pp. 615–618, under headings "Pleadings as Proof under a General Denial" and "Sworn Pleadings as Proof". Rolfe v. Swearingen, Tex. Civ.App., San Antonio, 1951, 241 S.W.2d 236, 239, writ refused, n. r. e.

■ Here, by a late filed pleading, one of the plaintiffs in effect swore to the pleadings filed in behalf of both, asserting that the allegations thereof, and the counter-affidavits tendered in opposition to the defendants' motion for summary judgment, showed that there were genuine issues of material facts. Since the counter-affidavits were properly disregarded, we are of the opinion that the plaintiffs were foreclosed under the authority of Sparkman v. McWhirter, supra, and that under these circumstances, their suit must be considered one as to which there is no such issue.

■ We pass to the phase of the appeal relative to the entry of judgment for the defaulting defendants and the defendant who filed the waiver and disclaimer, to-wit, Mrs. Jalah Puckett, Hobert Cassity, and Mrs. Arye Lewis, in that order. It is to be noted that the plaintiffs' claim as against each one of them is for that one-eighth interest in and to the subject properties which would have belonged to each of them, except for the trust asserted by plaintiffs. Therefore, the obligation to the plaintiffs, if any, of each of these defendants is several rather than joint. When a cause of action alleged against several defendants is a joint obligation only, and not several as well as joint, the answer of one defendant doubtless enures to the benefit of all. But this is not the case where the liability is joint and several; in such case, the defense set up by one defendant is not available to the other. See text and cases cited in 8 Tex.Jur., Ten Year Supp., p. 108, "Pleading", sec. 65, "Answers of Codefendants." Certainly the same thing would

be true when the obligation is several, irrespective of any question as to whether it might also be joint. We do not believe that any answer which was filed by those defendants who did answer would enure to the benefit of those who did not, despite the observation (not the holding) to this effect in Greer v. Bringhurst, 1900, 23 Tex. Civ.App. 582, 56 S.W. 947, error refused. The notation "refused" to writs of error prior to June 14, 1927, meant that the Supreme Court approved the result reached by the Court of Civil Appeals, but did not necessarily approve the opinion. See chart in Texas Bar Journal of December, 1949.

■ The plaintiffs' action was one in trespass to try title, and for damages. In the first respect, the demand is liquidated, and as to the latter, unliquidated. Therefore, as to the defaulting defendants, the plaintiffs were entitled to judgment on the title without any necessity of presenting proof, though if they desired to prosecute their claim for unliquidated damages based on the mesne profits, it would have been necessary that they offer proof thereon. T.R.C.P. 799; see also Caldwell v. Fraim, 1869, 32 Tex. 310. As regards Mrs. Lewis, who filed the disclaimer, plaintiffs would be entitled to judgment for the recovery of her one-eighth interest in the land described by their petition, if the petition is adequate. See 41–A Tex.Jur., p. 641, "Trespass to Try Title", sec. 114, "Right of Plaintiff to Judgment". However, since Mrs. Lewis filed only the disclaimer, and that prior to the time of trial, no judgment for costs should be awarded against her. See 41–A Tex.Jur., p. 776, sec. 223, "Effect of Disclaimer".

■ We observe from the plaintiffs' petition, upon which they announced ready for trial and moved for judgment by default and on the disclaimer, that their petition met the requirements of T.R.C.P. 783 with reference to the property sought to be recovered in Tarrant County, Texas. However, their description of the property sought to be recovered in Dallas County, Texas, was described only as "House and lot known as 4613 Gaston Avenue in the city of Dallas, being a lot 50 x 150 feet with improvements thereon." The requirement of the Rule is that the petition so describe the premises sought to be recovered by metes and bounds, or with sufficient certainty to identify the same, so that from such description possession thereof may be delivered. In other words, the description must be such that a decree could be entered therefor and a writ of possession executed thereon. 41–A Tex.Jur., p. 602, sec. 81, "Description and Situs of Property". If this requisite is not met by a plaintiff's petition in a trespass to try title suit, any judgment entered would be improper, even if it be a default judgment for the plaintiff, or a take-nothing judgment in behalf of defendants, as either would constitute error on the face of the record, inhibiting any decree upon the title. The insufficiency of the petition in that respect is an error apparent on the face of the record which is to be considered even absent any assignment. Clement v. First Nat. Bank, 1926, 115 Tex. 342, 282 S.W. 558; Stewart v. Collatt, Tex.Civ.App., Fort Worth, 1937, 111 S.W.2d 1131.

■ We are of the opinion that the requirement of the Rule relative to property description is not met by the description of the Dallas County property. See Small v. Morris, 1953, 152 Tex. 192, 255 S.W.2d 174; Wilson v. Fisher, 1945, 144 Tex. 53, 188 S.W.2d 150. From the description, we know the suit is concerned with a lot, 50 x 150 feet in size, but we do not know whether the 50 feet fronts on a street, or the 150 feet, or whether either distance does so. Neither do we know to whom the property is known as the 4613 Gaston Avenue house and lot or whether the property is indeed located on that street in Dallas. Entry of the judgment for the defendants that plaintiffs take nothing was, in legal effect, a decree to the defendants of title to this property, which would be ineffectual for lack of sufficient description of the property. See Stewart v. Collatt, supra.

Therefore, the take nothing judgment, in so far as the Dallas County property is concerned, must be reversed and the cause

to that extent remanded. The take-nothing judgment relative to the title to the lands in Tarrant County, Texas, is reversed and here rendered for the plaintiffs. Pursuant to rendition of such judgment by this court, plaintiffs Mrs. Jalah Moore Leach and Mrs. Mary Jane Peterson are awarded the one-eighth interest in and to said Tarrant County lands otherwise belonging to Mrs. Jalah Puckett, the same as to the one-eighth otherwise belonging to Hobert Cassity, and the same to a further one-eighth, disclaimer as to which was filed by Mrs. Arye Lewis.

The summary judgment rendered by the court below is affirmed.

All costs of appeal are taxed against plaintiff-appellants Mrs. Jalah Moore Leach and Mrs. Mary Jane Peterson.