**SPARKMAN et ux.**

v.

**McWHIRTER et al.**

No. 14688.

Court of Civil Appeals of Texas. Dallas.

Dec. 11, 1953.

Rehearing Denied Jan. 15, 1954.

—◆—

Eugene Brady, Greenville, and Moses & Truett, McKinney, for appellants.

Olin P. McWhirter and Allen Clark, Greenville, and Ripley E. Woodard and B. L. Templeton, Houston, for appellees.

YOUNG, Justice.

This appeal is by R. H. Sparkman and wife from grant of summary judgment under provisions of Rule 166–A, Texas Rules of Civil Procedure, in favor of S. R. McWhirter, adjudicating title to 166 acres of land, Hunt County.

Appellee McWhirter had theretofore sued the Sparkmans for the land in proceedings of trespass to try title, alleging a value of $7,500, praying for writ of sequestration and filing bond in sum of $15,000; to which defendants interposed statutory denial; in turn seeking affirmative relief by cross-petition of trespass to try title; and alternatively, to set aside a trustee's sale of the land to McWhirter on May 6, 1952 for alleged irregularities, together with a claim of grossly inadequate price accepted at such sale from the purchaser McWhirter through J. T. Poole, attorney in fact, who conducted the sale under deed of trust of date Nov. 27, 1934.

Facts antecedent to the controversy as alleged in the cross-action of appellants will be summarized: That in 1934 they had purchased the land from The Federal Land Bank of Houston, executing in such connection a vendor's lien note for $3,000, interest at 5%, both principal and interest payable in regular semi-annual amortization installments; the first 39 being in sum of $120 each, last installment for $86.88; payments to begin on or before July 1, 1935. These purchasers also executed a deed of trust to A. C. Williams, trustee, as further security, said note providing for accelerating maturity of principal and accrued interest in event of default, etc. Appellants had resided on the land since its purchase, using and claiming it as a homestead. They alleged that for more than a year prior to May 6, 1952 endeavors had been made to refinance and increase said loan, but to no avail; cross plaintiffs then seeking an appeal to the Governor of Farm Credit Administration at Washington, D. C., invoking the aid of U. S. Senator Connally and Representative Sam Rayburn, each of said officials advising these debtors that the matter had been presented to the named bureau heads for consideration and report; cross plaintiffs believing and having reason to believe that no foreclosure would be had pending such investigation. That defendant Land Bank, ignoring the intervention of both Senator and Congressman, proceeded to post notices for sale of the land to be held May 6, 1952 for a past due indebtedness of about $1,140, with S. R. McWhirter as the purchaser on a bid of $1,200. That thereafter upon notification by Hon. Sam Rayburn of the trustee's sale, plaintiffs offered purchaser McWhirter the full amount paid by him for the land and expenses, the latter even refusing to discuss the matter; the trust deed being executed by Sterling C. Evans, substitute trustee, through J. T. Poole, attorney in fact, to buyer McWhirter, father-in-law of said Poole; alleging a gross inadequacy of consideration in that the true value of the land was $12,000, cross plaintiffs having refused a bona fide offer in that amount as against the foreclosure price of $1,200. Here the sworn pleading of the Sparkmans detailing grounds for setting aside the trust deed in question, though lengthy, must necessarily be stated: "(A) As soon as cross plaintiffs were notified by the Honorable Sam Rayburn that the said sale had been in fact effected on May 6, 1952, they went at once to the purchaser under said sale, S. R. McWhirter, and offered to pay him the full amount which he had paid at said foreclosure sale, together with whatever additional expenses he had incurred therein, and said cross plaintiffs did in fact tender to S. R. McWhirter the sum of $1,200 plus such additional sum as he might

have incurred in connection with the purchase of said land; but the said S. R. McWhirter refused to accept said tender and said sum and refused even to discuss a conveyance to cross plaintiffs and indicated to cross plaintiffs in speech and in action that he knew that he had purchased land far in excess of the purchase price he had paid for same and he did not intend to lose any portion of the advantage gained by his payment of an inadequate price for the land. (B) Cross plaintiffs represent to the court that the value and the true value of said land is $12,000.00 and that they had in fact refused to sell same on a bona fide offer of $12,000.00 and that the purchase price of the hereinabove mentioned S. R. McWhirter at foreclosure sale for $1,200 is grossly inadequate and that the consideration paid therefor is so grossly inadequate as to shock the conscience of the court or any other honorable person; that in fact, upon pleadings filed in this case, defendant S. R. McWhirter has, himself, alleged the value to be in excess of $7,500.00. (C) That on May 6, 1952, on the date and occasion of the sale of the land hereinabove described to S. R. McWhirter at foreclosure sale by J. T. Poole, as aforesaid, by the acts, declaration and statement of said parties & each of them at said time & place the public was prevented from participation in said sale and from hearing said sale and was encouraged to stay away from said sale and said sale was secretly had and effected and one or more citizens who were or might have been interested in the purchase of said land at a proper price were encouraged to leave the place of sale and were discouraged from the place of sale and were in fact invited and asked to leave the place where said sale was effected, and free competitive bidding thereat was discouraged by said J. T. Poole and S. R. McWhirter. (D) That the said J. T. Poole, who as attorney in fact of Sterling C. Evans, as substitute trustee of the Federal Land Bank of Houston, and who as such effected said sale and executed the deed therefor thereafter was and is in fact a son-in-law to the man to whom said land was sold, S. R. McWhirter, and said purported deed was acknowledged before another relative of the purchaser, the notary taking the acknowledgment being Olin P. McWhirter. (E) That by the terms of such deed of trust one A. C. Williams was designated trustee for the owner of such indebtedness. That by an instrument in writing dated April 7, 1952, Sterling C. Evans was appointed substitute trustee, such appointment was recorded in the Deed Records of Hunt County, Texas, on April 9, 1952, and appears in Vol. 516, page 599 of such Deed Records. That, at the time said sale was held and prior thereto any person interested in bidding for such property upon searching the Deed Records of Hunt County, Texas, for the purpose of satisfying himself on the condition of such title, and the authority by virtue of which such sale was to be had, would have found and concluded that the only person having authority to conduct such sale, if anyone, was Sterling C. Evans and not J. T. Poole. That such matter would of course cast doubt on the authority and power of the said J. T. Poole to conduct such sale by virtue of said deed of trust and would cause a reasonable man to refuse and refrain from bidding at a sale so held and conducted by J. T. Poole. That the power of attorney purporting to give J. T. Poole authority to act for such substitute trustee was not filed for record until 2:30 P.M. on May 6, 1952, although such power of attorney bears date of April 7, 1952, the same date as the instrument appointing Sterling C. Evans to act as substitute trustee. That the said power of attorney was not filed for record at the same time as the appointment of the substitute trustee and such was calculated to create confusion in the minds of prospective bidders and purchasers and prevent said property from selling for an adequate consideration and was part of a scheme and plan entered into by the said J. T. Poole and his father-in-law, S. R. McWhirter, to permit the said S. R. McWhirter to purchase said property at such sale for a small, inadequate and unjust consideration, and to thereby prevent free competitive bidding at a fair and open sale. (F) Said

attorney, in fact for the substitute trustee in making such sale did not so conduct the same as to protect the interests of cross plaintiffs and did not perform the duty he owed to cross plaintiffs to see that no fraud was practiced detrimental to their interests and that such property was not sold without giving fair opportunity for it to bring its reasonable value, but on the contrary said attorney in fact conducted such sale in such a manner as to further his personal interests and the personal interests of his father-in-law, S. R. McWhirter. (G) That if said sale be set aside the said purchaser thereat can and will be made whole and no person will suffer inequity or injustice, but if such sale should be permitted to stand cross plaintiffs will be greatly injured and damaged in that they will lose their homestead of 166 acres of land of the reasonable value of $12,000.00 to satisfy a debt of less than $1,200.00, they will be deprived, in the manner aforesaid, of a right and opportunity to exercise their equity of redemption, and defendant S. R. McWhirter will be permitted to secure a windfall of almost $11,000.00 at the expense of cross plaintiffs by reason of having purchased at such sale, so conducted by his son-in-law, said property for a grossly inadequate consideration, a consideration so grossly inadequate as to shock the conscience of a Court of Equity * * *." Attached to this pleading were instruments, viz.: The 1934 deed of trust and the May 6, 1952 trustee's deed of substitute trustee Evans; cross plaintiffs praying for judgment upon final trial, declaring void said trustee's sale, for adjustment of equities, etc.; making party thereto The Federal Land Bank of Houston, hereinafter styled "Bank."

The Bank promptly filed the instant motion for summary judgment, charging that no genuine issue concerning any material fact had been alleged against it in appellants' foregoing cross-action; attaching thereto photostatic copies of the following instruments: The 1934 deed (expressly reserving the vendor's lien), the original of which was delivered to cross plaintiffs; original note, executed by cross plaintiff, R. H. Sparkman; original deed of trust, executed by the cross plaintiff, given to additionally secure the purchase money indebtedness, evidenced by said vendor's lien note; appointment of substitute trustee; power of attorney, executed by substitute trustee to the nominee; all as provided for in the deed of trust aforesaid; Notice of Sale; the return sworn to by the Attorney in Fact for the substitute trustee, showing places where the notices of sale were posted advertising the sale and on what date; the last page of a letter executed by the cross plaintiff, R. H. Sparkman, acknowledging receipt of the notice of sale; certified copy of the action of cross-defendant in exercising the option granted under the terms of the note and deed of trust to accelerate the unpaid balance upon default; and the appointment of a substitute trustee as provided for under the terms of the deed of trust additionally securing the payment of the purchase money indebtedness; the Bank, alternatively, by way of answer filing numerous special exceptions to appellants' above cross-action.

Purchaser McWhirter filed similar motion for summary judgment, attaching thereto the following affidavit of H. C. Wilson, M. V. Corley, Jesse Miller and Frank Lane: " * * * That we each reside in Hunt County, Texas. That we were present on May the 6th, 1952 at the North Court House door of the County Court House at Greenville, Texas, at about 2:00 o'clock P.M. and were present at the foreclosure sale of The Federal Land Bank of Houston, when J. T. Poole, as agent of The Federal Land Bank sold about 166 acre tract of land in Hunt County, Texas, to S. R. McWhirter. At the sale, Mr. J. T. Poole opened the bid as we recall at about $1,100 for the property and S. R. McWhirter bid $1,200 for same and no one else raised said bid. That we were present during all of the sale proceedings and that no one was prevented from bidding at said sale, there being several witnesses there, and everyone present had a chance to bid on said property. That there was no coercion

on the part of J. T. Poole or S. R. McWhirter or anyone else to prevent anyone from bidding at said sale. That said sale was free and open to the public and that everyone present were free to bid on said property, just as in any other public sale. That S. R. McWhirter's bid of $1,200 was the highest bid made at said sale for said property. The above facts are true and correct." To these summary motions, invoking benefit of Rule 166–A, T.C.P., the Sparkmans filed separate sworn answers consisting of exceptions and denials; making part thereof their aforesaid sworn answer and cross-action.

Certain facts of this record appear as undisputed; for instance, that appellants executed the 1934 deed of trust in favor of A. C. Williams, named as trustee; that upon death of Williams and pursuant to deed of trust provisions Sterling C. Evans was named substitute trustee, the same instrument authorizing appointment of an attorney in fact to conduct any sale thereunder, with no requirement that such designation of attorney in fact be placed of record; that default had been made in payment of the indebtedness, with loan in arrears at all material dates; that said Bank had exercised its option under terms of the vendor's lien—deed of trust note— to accelerate the unpaid balance upon default, and that notwithstanding their assertions to the contrary, cross plaintiffs had prior and actual notice of the trustee's sale to be held May 6, 1952.

 Concerning numerous of the fact allegations set forth in appellants' cross-action, the following conclusions are obvious: (1) That the trustee's sale will not be avoided merely because of inadequacy of price. Thornton v. Goodman, Tex. Com.App., 216 S.W. 147; for avoidance and in conjunction, there must be evidence of irregularity, though slight; which irregularity must have caused or contributed to cause the property to be sold for a grossly inadequate price; Allen v. Pierson, 60 Tex. 604; McKennon v. McGown, Tex.Sup., 11 S.W. 532; Driscoll v. Morris, 2 Tex. Civ.App. 603, 21 S.W. 629; First Nat.

Bank v. South Beaumont Land & Improvement Co., 60 Tex.Civ.App. 315, 128 S.W. 436; Gregg v. First National Bank, etc., Tex.Com.App., 26 S.W.2d 179. (2) That negotiations were pending for renewal of the indebtedness does not constitute a defense and is not such an irregularity, as will warrant a setting aside of the sale. Miller v. Gibralter Saving & Building Ass'n, Tex.Civ.App., 132 S.W.2d 606; Davis v. Volunteer State Life Ins. Co., Tex.Civ.App., 135 S.W.2d 588. (3) Failure to record the power of attorney from substitute trustee to an attorney in fact selling the property, when not required by the deed of trust, is not such an irregularity. Tom v. Kenedy Nat. Farm Loan Ass'n, Tex.Civ.App., 123 S.W.2d 416; Barber v. Federal Land Bank of Houston, Tex.Civ.App., 204 S.W.2d 74. (4) That a tender of the amount bid for the property and expenses was made immediately after the sale and to the purchaser or successful bidder, is not a ground for avoidance. Thornton v. Goodman, supra. (5) Where a family relationship exists between the parties to the sale, a court of equity will closely scrutinize all acts of the trustee in execution of the trust. Thornton v. Goodman, supra. (6) And while, assuming a gross inadequacy of price upon trustee's sale, it is not essential that a party claiming equitable relief therefrom should exercise that degree of diligence ordinarily required by law, Gandy v. Cameron State Bank, writ ref., Tex.Civ.App., 2 S.W.2d 971, the general rule of equity is not to reward the dilatory or those who sleep on their rights. McCauley v. Northern Texas Traction Co., Tex.Civ.App., 21 S.W.2d 309; Ricketts v. Ferguson, Tex.Civ.App., 64 S.W.2d 416.

Appellants' cross-action for avoidance of trustee's deed is thus narrowed to occurrences on date of May 6, 1952, though inferentially charging a "scheme or plan" by attorney in fact Poole and the purchaser at other times and places to discourage a fair and open sale. In this connection appellants' single point charges error in grant of summary judgment "when the pleadings and affidavits filed by appellants

disclosed genuine issues of material facts which, if true, would entitle appellants to relief and such facts were not denied, under oath or otherwise, by appellees." In reply thereto appellees advance as counter point 1, that "There being at the most only one material fact question raised by the defendants and conclusively disproven by an affidavit which was not disputed by defendants, and defendants having presented no affidavit either opposing said affidavit, or stating why they were unable to present facts by affidavit essential to justify their opposition, and no defense appearing either in the answer or cross-action, the trial court was required to sustain plaintiff's motion for summary judgment in a trespass to try title suit."

■ The office of Rule 166–A, Summary Judgment Procedure, is the prompt determination of whether genuine issues of fact are presented by the record; and "(c) * * The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that, except as to the amount of damages, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Object of the Rule is to permit movant to pierce formal allegations of fact in pleadings and grant relief by way of summary judgment when it appears from uncontroverted facts set forth in affidavits, depositions, or admissions on file that, as a matter of law, there are no substantive issues of fact presented for trial; Schreffler v. Bowles, 10 Cir., 153 F.2d 1; the underlying principle being that if, under the facts developed, the court at the trial would be required to direct a verdict for the moving party, then a summary judgment should be entered. Christianson v. Gaines, 85 U.S. App.D.C. 15, 174 F.2d 534; Arlington Heights Appliance Co. v. Gordon, Tex.Civ. App., 244 S.W.2d 337. The Rule, subd. (e), further provides in part that "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively

that the affiant is competent to testify to the matters stated therein. * * *"; and "(f) * * * Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

■■ The instant record discloses that to allegations of cross plaintiffs claiming irregularities on date of sale, appellees interposed affidavits of H. C. Wilson et al., explicitly refuting the truthfulness of such charges; no affidavits in opposition being offered, or any showing as to why same were unavailable; in response cross plaintiffs merely filing a sworn denial inclusive of their pleading heretofore quoted in part. Appellants were not present at the sale and aforesaid sworn pleading, even if treated as an affidavit, was in the nature of hearsay and therefore not in compliance with the Rule requiring opposing affidavits to be on personal knowledge, setting forth such facts as may be admissible in evidence, showing "affirmatively that the affiant is competent to testify to the matters stated therein." "An affidavit based on hearsay and statements contained in affidavits that are but mere conclusions of law are insufficient to warrant the overruling of a motion for summary judgment." 41B Tex. Jur. p. 50; Fonville v. Southern Materials Co., Tex.Civ.App., 239 S.W.2d 885. Says Judge Stayton, Professor of Law, University of Texas, 29 Texas Law Review 688: "But, while there are decisions to the contrary, the better reasoned cases decide that mere pleadings do not show that there is a genuine issue of fact, and thus prevent summary judgment, but that the showing is to be made by depositions, admissions, affidavits, or like 'proofs,' one, some or all (Citing cases.) If controversy in the pleading were alone enough to prevent summary judgment, this practice would ordinarily be useless, for there is no effective constraint upon what may be asserted

or denied in the pleadings and there are many generalities which are good pleading but, to the full extent of their application in a particular case, bad truth. * * *."

Hon. Roy McDonald, member of Texas and New York Bars, author of McDonald, Texas Civil Practice, in 30 T.L.R., p. 297, reasons to the same effect: "But where a motion is supported by affidavits, depositions, admissions, or other extrinsic evidence, sufficient upon its face to establish facts which, if proven at the trial, would entitle the movant to an instructed verdict, the opponent must specify opposing evidence which will raise an issue as to some material fact, or must justify his failure to do so in accordance with the provisions discussed in part 3 below. This is the situation which has created ambiguity in certain federal precedents. One hypothetical fact situation should be made clear. Suppose that the plaintiff's petition alleges facts sufficient to constitute a cause of action. The defendant puts in an answer which creates issues of fact. One of the parties then moves for summary judgment, supporting the motion by affidavits or other extrinsic evidence. His opponent puts in no counter-affidavit or extrinsic evidence. Do the issues created on the pleading prevent rendition of a summary judgment? There are federal cases which give an affirmative answer. It has been held that where the respondent's pleading was verified, contrary statements in the movant's affidavits need not be accepted as established. An argument of some plausibility can be erected in support of this view. But to have any validity, this argument must rest on two questionable assumptions: first, that the factual detail in the pleading is as precise as it would be in a counter-affidavit; and second, that the verification of the pleading is taken as seriously as is the verification of special affidavits submitted on motion. Experience does not persuade this writer that either assumption is valid." In short, an affidavit opposing a motion for summary judgment must meet the requirements of Rule 166–A(e), a mere general denial likewise being insufficient. See LeMond & Kreager, Vol. 30 Tex. Law Review, pp. 615–618, under heading: "Pleadings as Proof under a General Denial, Sworn Pleadings as Proof."

Nor did the further allegations, though sworn to, that Messrs. Poole and McWhirter in effect conspired to keep off the record the power of attorney under which sale was made, thereby calculating "to create confusion in the minds of prospective bidders and purchasers," raise issues of legal fraud; the deed of trust to which they were a party not requiring its filing prior to the challenged sale.

We have examined this record with unusual care because of the truly unfortunate position in which appellants have placed themselves, whether unwittingly or not. However appellees are entitled to all relief that may be properly theirs under the invoked Rule. The judgment of the trial court must be affirmed, and it is so ordered.