R. H. HUTCHINSON, Appellant,

v.

CITY OF DALLAS, Appellee.

No. 15094.

Court of Civil Appeals of Texas.

Dallas.

April 6, 1956.

Rehearing Denied May 18, 1956.

F. L. Kuykendall, Austin, for appellant.

H. P. Kucera, City Atty., R. A. McBean, T. P. MacMaster and C. C. Wells, Asst. City Attys., Dallas, for appellee.

DIXON, Chief Justice.

This is an appeal from a summary judgment in favor of the City of Dallas in a suit filed by the city to collect delinquent

taxes for the city and for the Dallas Independent School District amounting to $1,661.87 plus penalty and interest, on 29 pieces of real estate owned by appellant R. H. Hutchinson. It was alleged that the taxes were delinquent on two pieces of property since 1946, on the others since 1951.

In a sworn answer Hutchinson in general allegations asserted that said taxes were charged against him on the basis of an arbitrary, confiscatory, unfair and fraudulent manner of evaluating with the result that his taxes were disproportionate to the taxes assessed against property of similar value and location, and resulted in placing a greater portion of the tax burden on him than the law allows; and that the tax assessments were contrary to Article 8, Section 1 of the Constitution of the State of Texas, Vernon's Ann.St., in that they were not equal and uniform, thus depriving him of his property without due process of law, art. 1, § 19.

Appellant further alleged that Atlas Metal Company, Continental Oil Company, Nolan Browne, and Strickland Motor Company were owners of nearby property similarly situated as his Lot 1, Block 2, Canal Addition to the City of Dallas; that the taxes of said other owners had either not been increased at all, or if increased, the increases were not in proportion to the increases against his property; and that the increases against him were not fair and uniform but were arbitrary, illegal, and fraudulent, so were void. He also alleged that his property had not been assessed with regard to its cash or market value, but that the city had followed a system or scheme which had resulted in unfair, non-uniform, and confiscatory assessments against appellant. As to Strickland Motor Company, but not as to other owners, appellant pled specific facts in some detail in connection with his general allegations of disproportionate increases assessed against his property as compared to the Strickland property.

In support of his sworn pleadings appellant filed his affidavit from which we quote:

"In all of the years in question I have, according to the law, duly rendered my taxes on property owned by me and on each occasion, long before delinquency, have tendered checks to the city in full payment of my taxes. The city on each occasion has refused to accept payment *and has re-assessed all of my property at higher rates than has been levied against my various neighbors in the immediate vicinity of my properties. * * ** Nolan Browne is the owner of about 27,500 square feet of land and a 5,000 square foot masonry building which fronts on Singleton Blvd., Dallas, Texas, a busy commercial thoroughfare. From 1946 his tax rate has increased from about $17.00 to $27.50; affiant on the other hand has a 5,000 foot frame building on a 7,200 square feet tract of land fronting on Sylvan Avenue with a mud strip of 30 feet between his building and the hard surfaced roadway and said land is not as favorably situated commercially as Browne's. For the same period of time, 1946 to 1952, his tax rate has increased from about $37.76 to $56.58. Affiant's land is smaller, his building is inferior in construction and it is not as favorably located. Affiant has continuously complained to the city about this discrimination to no avail.

"In connection with Strickland Motor Company the affiants sold said property to Strickland in about 1945. Since that time its tax rate has increased very little but that of affiant on his nearby land has increased almost two fold. The land sold to Strickland contained 32,700 square feet and was improved with a frame and brick building containing about 5,000 square feet. A short distance away on Sylvan the affiant had 7,200 square feet of land and a frame building about 5,000 square feet in dimension. With the Strickland land on Singleton being about four times as large as affiant's land and more attractive from a commercial location the following unequal, unfair and non-uniform arbitrary rates were set by the city: Strickland in 1946, $19, and affiant $37.76; Strickland in 1947, $21 and affiant, $43.80; Strickland in 1948, $22 and affiant, $45.99. In 1949 the city

mingled the Strickland lots with other property of it and since then it is impossible to trace the tax structure on the property in question; however up to 1952 the affiant's rate has increased to $56.58.

"The same situation exists in respect to Atlas Metal Co., Continental Oil Co. *and many other pieces of property* in the same vicinity. Whether the formula used by Mr. Register is proper or not it has not been fairly, uniformly and equally applied against affiant and others in the immediate vicinity of his properties, else such discrepancy could not exist." (Emphasis supplied.)

Appellant's property referred to in the above affidavit is Lot 1, Block 2, Canal Addition to the City of Dallas.

It will be observed that the affidavit contains general allegations to the effect that *all of his property* has been assessed at higher rates than the property of various neighbors, and that the same situation exists with respect to the Atlas Metal Company and Continental Oil Company properties and *many other pieces of property* in the same vicinity. However appellant singles out only Lot 1, Block 2, of Canal Addition for specific attack and comparison with two other properties, those of Strickland Motor Company and Nolan Browne. Nowhere does he specifically attack or compare the assessments of any nearby properties with any of the other 28 pieces of his property included in the city's suit for delinquent taxes. As shown by the record, these include Lots 7, 8, 9, 10, and 11, in Block 2; Lots 1, 2, 3, 4, and 5, in Block 4; and Lots 2 and 3, in Block 5,—all in Canal Addition. Each of these lots was assessed a School tax of $1.23 for the years 1951 and 1952, and amounts varying from $2.10 to $5.10 as a combination city and School District tax for the year 1953. Lot 5, Block 5 of the same Addition was assessed a School tax of $0.43 for the year 1946 and increasing amounts for other years up to $3.69 in 1952.

In support of its motion for summary judgment the city filed several affidavits.

We quote from the affidavit of Ralph Smothers, Deputy Assessor and Collector of Taxes:

"In assessing real estate for taxation land and buildings are appraised separately due to the different factors governing the value of each. Land valuations are based on location, utilities, accessibility, size, surroundings, zoning, trackage, availability, etc. Buildings are assessed for tax purposes on their reproduction cost, less depreciation, which includes type and kind of construction, age and condition, usefulness whether a one or multi-purpose building.

"I assessed for taxation the property in what is known as West Dallas, and in particular, all that certain real estate referred to in this suit and mentioned in defendant's answer herein.

"Each year from 1945 to 1954, inclusive, each lot, tract, or parcel of land has been assessed using the above factors, at its fair value considering all of these factors and all property, real, personal and mixed, is assessed on the same basis and at the same rate of sixty-five (65%) per cent of true value.

"Regarding the defendant's allegation and comparison of his Lot No. 1, in Block No. 2, Canal Addition, with that of 'Strickland' property, the defendant formerly owned this Strickland property and while the owner of such property took depreciation on same and as that property deteriorated asked for and obtained reductions in valuations for tax purposes. Then the defendant sold this property to the Strickland people and built a new building on his Lot 1 and such building was new, it was of greater value than the Strickland building and was assessed accordingly.

"Regarding the allegation of the defendant that the City of Dallas 'destroyed the identity of the Strickland property,' this property is still designated and known by lot and block numbers on the official map and plat thereof on file as it has always been, but the City of Dallas, at the request of the Strickland people and for the con-

venience of the Strickland people only, renders these lots and acreage together in one bill.

"Regarding the contention of the defendant in comparing the assessed valuations of his lots with those of Nolan Browne, the defendant's lots are 75 ft. x 94 ft. with a 15 ft. alley, while the Nolan Browne lots are 25 ft. x. 125 ft. with no alley and thus the difference in valuation. * * *"

We also quote from the affidavit of Norman Register, Assessor and Collector of Taxes:

"* * * In appraising building, uniform valuations are placed on all similar properties on a reproduction cost basis, less depreciation, according to upkeep and condition. In appraising land, uniform valuations are placed on all similar properties considering location, accessibility, zoning, surroundings and the many other factors that govern the valuations. * * * All the property of the defendant herein, R. H. Hutchinson, and the property owned by Atlas Metal Company, Continental Oil Company, Nolan P. Browne and Strickland Motor Company, located in the immediate vicinity of defendant's property, was appraised and valued in the same manner set out above during the years 1946 to 1952, inclusive."

We quote from an affidavit of Harold G. Shank, City Secretary:

"* * * That for the year 1946 R. H. Hutchinson appeared before the Equalization Board of the City of Dallas protesting the valuation placed by the Assessor and Collector of Taxes on Lot 1, Block 2, Canal Addition to the City of Dallas, only, and the Board of Equalization after hearing all the evidence overruled Mr. Hutchinson's protest as to such valuation, equalized the tax rolls for 1946 and returned the same to the Governing Body of the City of Dallas for approval. That for the years 1947 through 1950, inclusive, the defendant did not protest to nor

appear before the Equalization Board of the City of Dallas on the above described property or any other property owned by him in the City of Dallas."

The legal principles which must guide us in passing on the propriety of the summary judgment in this case have often been stated and need not be repeated at length here. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929; Sparkman v. McWhirter, Tex.Civ.App., 263 S.W.2d 832; Loud v. Sears, Roebuck & Co., Tex.Civ. App., 262 S.W.2d 548, 555. The main question we must determine is whether the factual allegations set out in appellant's affidavit, viewed in their most favorable light, make out a justiciable fact issue entitling appellant to a trial on the merits.

In considering the question we must bear in mind applicable principles of tax law as recently stated by our Supreme Court:

"It is now well settled that the assessment of property for tax purposes is a quasi-judicial function of boards of equalization and that no attack on valuations fixed by such boards can or will be sustained in the absence of proof of fraud, want of jurisdiction, illegality, or the adoption of an arbitrary and fundamentally erroneous plan or scheme of valuation. [Citing authorities.] Moreover, when their official action is attacked it will be presumed that such boards discharged their duties as public agencies according to law and acted in good faith. [Citing authorities.]

"While it has been held that a grossly excessive valuation may, in law, be sufficient to establish such fraud or illegality as to render a valuation void [citing authorities], it is held with equal emphasis that mere errors in judgment or the fact that a trial judge or jury differs with the valuation fixed will not suffice as a basis for avoiding the board's action. [Citing authorities.]

"If a valuation fixed by a board of equalization is attacked on the ground of unlawful or arbitrary discrimination it is not sufficient to show, comparatively, that in other isolated instances, property of equal or greater value than that in suit, was valued at less [citing authorities] * * *, except where the omission was the result of a deliberate and arbitrary plan or scheme to permit certain classes of property to escape their fair share of the tax burden. * * *

"When the attack is made because the board followed an arbitrary plan or scheme of fixing values, the taxpayer, to prevail, must show not only that the plan was an arbitrary and illegal one but also that the use of the plan worked to his substantial injury. * * *" State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569, at pages 572, 573.

We shall not quote at length from other cases, but there are others in which the legal principles involved here have been discussed: Victory v. State, 138 Tex. 285, 158 S.W.2d 760, at page 766; State v. Houser, 138 Tex. 28, 156 S.W.2d 968, at page 970: "* * * such valuations will not be set aside merely upon a showing that the same are in fact excessive"; Lubbock Hotel Co. v. Lubbock Independent School Dist., Tex.Civ.App., 85 S.W.2d 776, at page 778: "The good faith of tax officials is presumed, * * * burden of proof is upon complainant to establish a violation of the constitutional guaranty of uniformity"; Reynolds v. Crudgington, Tex. Civ.App., 266 S.W.2d 430, at page 434; Lamar County Electric Cooperative Ass'n v. Red River County, Tex.Civ.App., 170 S.W.2d 579, at page 580; Exporters & Traders Compress & Warehouse Co. v. City of Marlin, Tex.Civ.App., 130 S.W.2d 860, at page 862, err. dism. judg. correct; 26 R.C.L. 247.

■ Though appellant says that the city in taxing him has followed a plan and scheme without regard to constitutional requirements, he nowhere has attempted to describe the alleged wrongful plan or scheme which he alleges the city adopted. His general statements in the nature of legal conclusions, not supported by factual statements, are not sufficient to raise a fact issue. Leach v. Estate of Cassity, Tex.Civ.App., 279 S.W.2d 630, at page 634, ref.n.r.e.; Sparkman v. McWhirter, Tex.Civ.App., 263 S.W.2d 832, at page 838; Fonville v. Southern Materials Co., Tex. Civ.App., 239 S.W.2d 885, at page 888, ref. n.r.e.; Hurley v. Citizens Nat. Bank, Tex. Civ.App., 229 S.W. 663, at page 665; Sanders State Bank v. Hawkins, Tex.Civ. App., 142 S.W. 84, at page 88. The city on the other hand has described the method by which it arrives at values for taxing purposes. Appellant has not pointed out anything, nor do we see anything inherently wrong or illegal in the plan or system described by the city.

■ If the factual allegations contained in appellant's pleadings and affidavit are viewed in their most favorable light, they will support a finding of fact that appellant's Lot 1, Block 2, of Canal Addition was over-valued in comparison to the property of Strickland Motor Company and Nolan Browne. But as authorities above cited point out, that fact alone is not sufficient as a matter of law to raise a fact issue in a tax suit attacking the validity of an assessment on the ground of unlawful or arbitrary discrimination. Appellant was required to go further and show that the valuation given his property was so grossly excessive as to constitute in law evidence of fraud, bad faith, or illegality on the part of the Equalization Board. The facts presented by appellant in his affidavit will not support such a conclusion. For one thing, appellant has shown only that in isolated instances (appellant's Lot 1, Block 2, Canal Addition, compared to the Nolan Browne and Strickland Motor Company properties), properties of equal or greater value than his property have been valued at less.

All three of appellant's points on appeal are predicated on his contention that by his pleadings and affidavit he has presented

a fact issue entitling him to a trial on the merits. We hold that under the record before us he has not. Therefore we overrule his three points.

The judgment of the trial court is affirmed.