Allen P. FANNIN, Appellant,

v.

JACINTO CITY et al., Appellees.

No. 13510.

Court of Civil Appeals of Texas.

Houston.

Jan. 21, 1960.

Allen P. Fannin, pro se, for appellant.

D. B. Mauzy, Houston, for appellee Jacinto City.

Irwin & Smith, Robert L. Smith and W. B. Irwin, Jr., Galena Park, for appellee Galena Park Independent School Dist.

WERLEIN, Justice.

This is an appeal by Allen P. Fannin from a judgment rendered against him by the court for delinquent taxes, interest and penalties, and foreclosure of tax liens, after withdrawing the case from the jury on motion of appellees, City of Jacinto City and Galena Park Independent School District. Appellant complains by his first Point that the court erred in withdrawing the case from the jury after all parties had rested and in entering judgment for appellees. By Points 2 and 3 he asserts the court erred in holding that appellant was estopped to contest the tax because he had failed to render his property and appear before the Equalization Board, and also erred in holding that the taxes in question were duly and legally assessed and owing.

Since the trial court withdrew the case from the jury and entered judgment for appellees, it is our duty in passing on the correctness of such ruling to consider the evidence in the light most favorable to

appellant and to indulge every reasonable intendment fairly deducible from the evidence in his favor. Simkins v. City of Corsicana, Tex.Civ.App.1935, 86 S.W.2d 792 and authorities cited. It becomes necessary, therefore, to examine the record in order to ascertain whether there is any evidence of probative force which would justify a finding in favor of appellant. Thomas v. Postal Telegraph-Cable Co., Tex. Com.App., 65 S.W.2d 282.

Appellees' witness, Mr. B. F. Scroggs, Jr., secretary and assessor-collector of the City of Jacinto City, testified that his records showed the total assessed value of appellant's Lot 10, Block 36–A, Industrial Addition, with improvements thereon, for the year 1957 was $2,850 and the tax due $39.90. The assessed value for the years 1952 to 1956, inclusive was $2,700. For 1958 the assessed value of Lot 10 and the tax due were the same as in 1957. The assessed value of appellant's Lot 12, Block 36–A, Industrial Addition, for 1957 was $2,700 and the tax due $37.80 and for 1958 the assessed value was $2,900 and tax due $40.60. The assessed value of Lot 12 for the years 1952 to 1956, inclusive was $2,550. Said lots were not rendered by the owner for 1957 or 1958. The assessed value was 50% of the estimated value of the property, thus making the estimated value of Lot 10 $5,700 and Lot 12 $5,800 in 1958.

Mr. Garrett, tax assessor and collector for Galena Park Independent School District, testified as to the delinquent school taxes in the sum of $53.70 on said lots, with improvements thereon, for 1958. The owner did not render the property for school taxes. Each lot was assessed at $2,650, representing 40% of its estimated value of $6,500. Exhibits confirming amounts due were introduced by both appellees without objection. The taxes were duly levied and assessed as found by the trial court.

The testimony showed that appellant bought the lots with houses thereon in 1957 from the Federal Housing Administration through an agent, a Mr. McLuen, at a cost of $1,500 each; that the houses were of tile construction and they were in very poor condition; that the concrete slab floors were broken and there were cracks in the tile walls and the ceiling was cracked and sway-back; that said agent had not been offered a higher price and sold them for the price offered. Mr. McLuen testified he did not know the fair cash value of the properties; that he didn't think they were tenantable at that time. He didn't know whether the F. H. A. practice on foreclosing property was to make a profit or just obtain the amount of equity they had in the property. He knew the amounts accepted for the property did not represent what they had against it.

Appellant testified as to the poor condition of the houses and as to the repairs and improvements he made thereon immediately after buying them, at a cost of not more than $600 on each lot other than his own labor, the value of which was not shown. There was testimony that appellant had asked Mr. McLuen to try to sell the lots for $3,000 each, net to owner, but he had not found a buyer yet at such price; that the houses rented for $50 per month when rented.

Appellant not only failed to prove the value of his lots and improvements thereon, but he failed to show what other comparable property in the vicinity was assessed for taxes or the reasonable market value thereof. He contends that the price he paid for the lots is some evidence of their value, arguing that the F. H. A. didn't have to sell and he didn't have to buy. The record does not show why the F. H. A. was willing to sell at the price accepted, which was apparently even less than their equity in the property, according to Mr. McLuen. After making repairs and improvements appellant wanted $3,000 net for each lot, which would give him a substantial profit. The record doesn't show what terms other than cash would be acceptable to him. He receives rent of $50 per month from each house. Assuming the premises are kept rented, the amount re-

ceived would amount to a return of 10% on a valuation of $6,000 for each lot, out of which taxes and cost of repairs and upkeep would have to be paid.

 In determining the reasonable market value of real estate, the witness qualified to testify as to values may take into account sales of similar property in the vicinity, but he must testify to market value as a fact. In this case no witness—not even appellant himself, who as owner might have testified to values if he knew them—has shown the reasonable market value of the property in question, or that the values placed thereupon for tax purposes were excessive. There is no testimony as to the value of other nearby comparable property. There is nothing to indicate that the taxes assessed are not equal and uniform, or that such taxes are unjust, arbitrary, unreasonable or discriminatory, or that appellant's property is assessed differently from other nearby property.

In State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569, 572, the court stated:

"It is now well settled that the assessment of property for tax purposes is a quasi-judicial function of boards of equalization and that no attack on valuations fixed by such boards can or will be sustained in the absence of proof of fraud, want of jurisdiction, illegality, or the adoption of an arbitrary and fundamentally erroneous plan or scheme of valuation. State v. Houser, 138 Tex. 28, 156 S.W.2d 968, 970–971; Druesdow v. Baker, Tex. Com.App., 229 S.W. 493, 495. Moreover, when their official action is attacked it will be presumed that such boards discharged their duties as public agencies according to law and acted in good faith." [Citing authorities.]

See also Hutchinson v. City of Dallas, Tex.Civ.App., Dallas 1956, 290 S.W.2d 253.

There is nothing in the record before us to indicate that the taxing authorities acted arbitrarily or in bad faith or used any improper scheme or method. In Bernhardt v. Port Arthur Independent School Dist., Tex.Sup.1959, 324 S.W.2d 163, 166, there was some evidence of market value. The court, however, stated:

"The most that can be said for petitioner is that there were some inequalities and possibly errors in judgment. * * * The valuations assessed by the Board must be accepted and respected by the courts unless the evidence warrants a finding that the assessments were not made in good faith and as a result of honest judgment."

See also City of Arlington v. Cannon, 153 Tex. 566, 271 S.W.2d 414.

There is nothing in the record to indicate that the court in withdrawing the case from the jury and rendering judgment did so on the ground of estoppel arising from appellant's failure to render his property for assessment. The case of French Independent School Dist. of Jefferson County v. Howth, 1940, 134 Tex. 211, 134 S.W.2d 1036, relied on by appellant, is factually inapplicable to the present case.

In considering the evidence in the light most favorable to appellant, we are of the opinion that there is no evidence that appellees' taxing plan in assessing the property in question was arbitrary, discriminatory or not uniform, or that such plan violated any law or any provision of the State Constitution, or that appellant has been injured by the assessment placed upon his property. Appellant has not asserted, nor has he adduced any evidence to the effect, that his property was assessed higher than other nearby property of equal or higher value owned by others.

The judgment of the Trial Court is affirmed.