R. H. MAYNE et al., Appellants,

v.

DUNCANVILLE INDEPENDENT SCHOOL DISTRICT et al., Appellees.

No. 16348.

Court of Civil Appeals of Texas.

Dallas.

May 22, 1964.

Rehearing Denied June 19, 1964.

Bonney & Wade and Minor Morgan, Dallas, for appellants.

Saner, Jack, Sallinger & Nichols, H. Louis Nichols, Dallas, for appellees.

WILLIAMS, Justice.

This action was originally instituted by fifty-nine taxpayers and owners of real property located in the Duncanville Independent School District in which plaintiffs sought to enjoin Duncanville Independent School District and James Petton, Tax Collector and Assessor, from collecting the 1962 ad valorem taxes which had become due on October 1, 1962. Plaintiffs alleged that the defendant school district, and its agents, had pursued a deliberate, systematic, arbitrary, fraudulent and unlawful plan, scheme and course of action which had resulted in the imposition of unequal taxes against plaintiffs in violation of Art. 8, Sec. 1, of the Constitution of Texas, Vernon's Ann.St. Plaintiffs prayed that the assessment against them be declared unconstitutional and void. Plaintiffs withheld payment of the taxes, but paid equivalent sums into the registry of the court pending the outcome of the litigation. The defendants filed their answer and also a counterclaim seeking recovery of the delinquent taxes, plus penalty, interest and foreclosure of tax liens.

Defendants then filed a motion for summary judgment, supported by documents and affidavits pertaining to the method of procedure followed in assessing the various tracts of land. Plaintiffs replied with three separate affidavits from one real estate expert in which he alleged that the plaintiffs' properties had been substantially overvalued in comparison with other properties in the district. Following a hearing the trial court granted defendants' motion as to all but nine tracts of land. The action as to the nine tracts was severed and the partial summary judgment as to the remainder became a final judgment and is now before us on appeal.

Appellants' sole point on appeal challenges the propriety of the trial court's order sustaining the motion for summary judgment. Since this case is one involving the summary judgment rule, Rule 166–A, T.R.C.P., it becomes our duty, in passing upon

the correctness of the trial court ruling, to consider the evidence before the trial court in a light most favorable to appellants and to indulge every reasonable intendment clearly deducible from the evidence in their favor. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929. The basic question for our determination is whether the affidavits of appellants' real estate expert, viewed in their most favorable light, reveal a justiciable fact issue which would entitle appellants to a trial on the merits of the case before a court or jury.

Appellees' motion for summary judgment alleged the absence of an issue of fact. Attached to this motion was a certified copy of the tax roll showing the taxes due and owing by the appellants, describing the land in each instance as well as its valuation for tax purposes.

Appellees attached the affidavit of J. E. Petton, Assessor and Collector of Taxes, showing that for 1962 all things required to be done in the assessment and levying of taxes by the proper officials of the school district had been legally performed.

Exhibit "C", attached to appellees' motion contains the various minutes of the meeting of the Board of Equalization of the district. This instrument shows the names of appellants who appeared before the Board to protest the levy and assessment of their taxes and also reveals those appellants who did not appear and protest. These minutes reveal that in some instances the Board made certain adjustments and in other instances the adjustment was denied.

Exhibit "D" sets out the procedure followed by the Assessor and Collector of Taxes in arriving at the valuations and carrying out the equalization program, stating specifically the steps followed in appraising each piece of property, the notice given to the taxpayers, and the types of work sheets completed in valuing each piece of property.

In opposition to the motion appellants tendered three affidavits executed by A. A. Slaughter, a realtor and real estate appraiser whose experience and qualifications were not challenged. In the first two affidavits filed by Slaughter the witness makes broad and general statements and conclusions relating to lack of uniformity in appraising properties within the school district. Therein he states that he has examined and appraised the properties owned by the appellants and that he has also examined and appraised a cross-section of properties within the district, but not owned by appellants, and that a comparison of these appraisals leads him to the conclusion that the school district has adopted a policy of appraising other properties at a lesser value than the properties owned by appellants.

In his third affidavit Slaughter attaches as Exhibit "A" a list of the real properties owned by appellants and the market value of each as appraised by the school district. He also then sets out his appraisal of the value of these properties. It is admitted that in practically every instance appellants' properties consist of *unimproved acreage*. An analysis of the comparison of Slaughter's appraisal and the appraisal of the school district as to the properties owned by appellants is rather interesting. In one instance Slaughter's appraisal is higher than that of the school district. In two instances the appraisals are identical. In a relatively few instances Slaughter's appraisal is one-half that of the school district. In the remaining instances, representing the great bulk of the properties of the approximately fifty-nine appellants there is only a relatively small range of difference between the appraisals.

Slaughter attaches to his third affidavit, as Exhibit "B", a list of 166 properties belonging to persons other than the appellants. These properties consist of *residential properties with improvements* located thereon and in each instance the value assessed by the district is the same or less than the valuation placed thereon by

Slaughter. He concludes his affidavit as follows:

"These lists show that the closely spaced house and lot properties belonging to persons other than the Plaintiffs, are valued by the School District for tax purposes at their actual market value or less; whereas the properties of the Plaintiffs are valued by the School District for tax purposes at figures grossly in excess of their actual market value."

■ Appellants contend that Slaughter's three affidavits, when taken as true, demonstrate that appellants are discriminated against in the matter of assessment of taxation, contrary to the constitutional provision. We are unable to agree with appellants and affirm the trial court's judgment.

■ The constitutional attack against the school district in this case stems from Art. 8, Sec. 1, of the Constitution of Texas which provides that: "Taxation shall be equal and uniform" and that all property "shall be taxed in proportion to its value, which shall be ascertained as may be provided by law." Art. 7174, Vernon's Ann. Civ.St. provides that "[R]eal property shall be valued at its true and full value in money." Art. 7212, V.A.C.S. has invested power in boards of equalization to hear evidence touching on the market value or true value of property. It has been held that these provisions mean that assessed valuations shall be based on the reasonable cash market value of property. Rowland v. City of Tyler, Tex.Comm.App., 5 S.W.2d 756. The question of what constitutes "equal and uniform" has resulted in many problems for the reason that exact uniformity and equality have long been recognized as being unattainable. Rosenburg v. Weekes, 67 Tex. 578, 4 S.W. 899; Cooley on Taxation, 4th Edition, Vol. 1, Sec. 259. Accordingly, courts have sought to establish certain rules which must be followed as guides to determine whether a tax on assessed valuations violates the constitutional requirement.

The cardinal rules governing this case are set forth in the case of State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569, wherein the court said:

"It is now well settled that the assessment of property for tax purposes is a quasi-judicial function of boards of equalization and that no attack on valuations fixed by such boards can or will be sustained in the absence of proof of fraud, want of jurisdiction, illegality, or the adoption of an arbitrary and fundamentally erroneous plan or scheme of valuation. State v. Houser, 138 Tex. 28, 156 S.W.2d 968, 970–971; Druesdow v. Baker, Tex.Com.App., 229 S.W. 493, 495. Moreover, when their official action is attacked it will be presumed that such boards discharged their duties as public agencies according to law and acted in good faith. Zachary v. City of Uvalde, Tex.Com. App., 42 S.W.2d 417; Lubbock Hotel Co. v. Lubbock Ind. School Dist., Tex. Civ.App., 85 S.W.2d 776, no writ; Hinkson v. Lorenzo Ind. School Dist., Tex.Civ.App., 109 S.W.2d 1008, writ dism.

"While it has been held that a grossly excessive valuation may, in law, be sufficient to establish such fraud or illegality as to render a valuation void, Johnson v. Holland, 17 Tex.Civ.App. 210, 43 S.W. 71, writ denied; City of Sweetwater v. Baird Development Co., Tex.Civ.App., 203 S.W. 801, no writ; Simkins v. City of Corsicana, Tex.Civ. App., 86 S.W.2d 792, no writ; Howth v. French Ind. School Dist., Tex.Civ. App., 115 S.W.2d 1036; French Ind. School Dist. [of Jefferson County] v. Howth, 134 Tex. 211, 134 S.W.2d 1036, it is held with equal emphasis that mere errors in judgment or the fact that a trial judge or jury differs with the valuation fixed will not suffice as a basis for avoiding the board's action. Simkins v. City of Corcicana, supra; Druesdow v. Baker, supra; State v. Houser, supra."

The court also said:

"If a valuation fixed by a board of equalization is attacked on the ground of unlawful or arbitrary discrimination it is not sufficient to show, comparatively, that in other isolated instances, property of equal or greater value than that in suit, was valued at less, Dallas County v. Dallas Nat. Bank, 142 Tex. 439, 179 S.W.2d 288."

The Supreme Court, in State v. Houser, 138 Tex. 28, 156 S.W.2d 968, held that such valuations will not be set aside merely upon a showing that the same are in fact excessive. As we held in Hutchinson v. City of Dallas, Tex.Civ.App., 290 S.W.2d 253, the showing of mere excessiveness of value is not sufficient as a matter of law to raise a fact issue in a suit attacking the validity of an assessment on the ground of unlawful or arbitrary discrimination. It is necessary to go further and show that the valuation given the property was so grossly excessive as to constitute in law evidence of fraud, bad faith, or illegality on the part of the equalization board. We believe that our opinion in the Hutchinson case, supra, is determinative of this appeal.

■ Inasmuch as it is well established that the good faith of tax officials is presumed, the burden of proof is upon the appellants to establish a violation of the constitutional guarantee of uniformity. Reynolds v. Crudgington, Tex.Civ.App., 266 S.W.2d 430; Hutchinson v. City of Dallas, Tex.Civ.App., 290 S.W.2d 253.

Appellants' efforts to meet this burden of proof, and to demonstrate the existence of issuable facts, must be found, if at all, in Slaughter's affidavits. We have carefully reviewed and considered these three affidavits in their most favorable light, and having done so we conclude that they fall short of meeting the requirements of the law when measured by the rules announced above. Of course we discard the general statements and legal conclusions, not supported by factual statements contained in the affidavits because these are not sufficient to raise a fact issue. Sparkman v. McWhirter, Tex.Civ.App., 263 S.W.2d 832; Leach v. Estate of E. C. Cassity, Tex.Civ. App., 279 S.W.2d 630; Hutchinson v. City of Dallas, Tex.Civ.App., 290 S.W.2d 253. When we look to the factual allegations contained in the affidavits we find that they reveal two things. First, they do reveal that in a few instances appellants' properties have been valued by Slaughter at one-half the value set by the taxing authority. Secondly, a group of approximately 166 other properties, *admittedly small lots and houses,* are valued differently than appellants' properties, *admittedly acreage and unimproved properties.* In our opinion, neither of these factual situations presents sufficient probative evidence to raise a factual issue of fraud or violation of constitutional prohibition against discrimination in taxation.

In the first instance the mere over-valuation of appellants' properties, as compared with the valuation placed on the same properties by Slaughter, is not sufficient. The alleged over-valuation must be such as to be grossly excessive and our study of the comparison of valuations leads us to the firm belief that a gross excessiveness is not shown, as a matter of law. Viewing his factual statements within the four corners of the affidavit, and exhibits attached, we conclude that rather than showing a grossly excessive valuation on the part of the district, Slaughter has merely demonstrated nothing more than the fact that in a few instances his valuation differs with that of the district and this does not meet the requirements of the law to demonstrate evidence of fraud, bad faith or illegality on the part of the district.

In support of its contention appellants rely upon the decision of the Supreme Court in Dallas County v. Dallas Nat'l Bank, 179 S.W.2d 288. However, an examination of the factual situation presented in that case clearly reveals that the opinion of the court is not applicable here. In that case the

evidence demonstrated that the property of the bank had been valued at approximately seven times as high as similar land. As Chief Justice Alexander of the Supreme Court said:

"A reasonable discrepancy between the true value of the property and the value at which it is assessed for taxes will be permitted to cover the difference in judgment as to the value of the property; but where the property is assessed at a value seven times as high as its true value, the discrepancy is too great. It does not evidence a mere difference in judgment as to the value of the property. (Citing authorities.)

"On the other hand, one whose property has been assessed on substantially the same basis as the great bulk of the property on the same tax roll may not have his assessment cancelled merely because in isolated instances some of the other property on the tax roll has been assessed at less than its proportionate value."

Appellants also rely upon Simkins v. City of Corsicana, Civ.App., 86 S.W.2d 792, but a careful examination of that opinion demonstrates that it is not controlling of the factual situation here presented. In that case the court rightfully struck down the assessment made by the City of Corsicana because of a clear demonstration that the City had delegated its duty of assessment to an individual and had acted arbitrarily in assessing the property by agreeing in advance to adopt and adhere to such individual's blanket report of the value of all real property within the city, without hearing further evidence. No such situation is present in this case.

Furthermore, Slaughter's demonstration that certain pieces of property, consisting of houses and lots, were valued differently than the properties of appellants, admittedly consisting of unimproved acreage, is insufficient, as a matter of law, to present an issue of fact as to fraud or illegality of assessment. This is for the simple reason that according to Slaughter's own statement the alleged comparable properties are different in kind and character than that owned by appellants. To form a comparison the properties should necessarily be of the same general kind and character.

Finding no error requiring reversal, the judgment of the trial court is affirmed.

Affirmed.